## Schearer, Appellant, *v.* Reading et al.

Argued September 28, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Charles H. Weidner,* of *Stevens & Lee,* for appellant.

*Alan M. Hawman, Jr.,* Assistant City Solicitor, for appellee.

OPINION BY MR. JUSTICE DREW, November 23, 1942:

Plaintiff, Walter S. Schearer, filed a petition for a writ of mandamus against the City of Reading, Harry F. Menges, Mayor, to compel his reinstatement as chief of police of the City and the payment of his salary from February 16, 1940, the date of his alleged wrongful dismissal. The refusal of the learned court below to grant the relief prayed for resulted in this appeal.

The case was tried by agreement of the parties by a judge without a jury, and the facts as set forth in the findings of fact are not in dispute. Plaintiff, however, filed exceptions to certain conclusions of law, which have to do with whether or not he had by the year 1936 by laches and neglect abandoned his office of chief of police and thus lost his civil service status.

The necessary facts are these: Reading is a city of the third class. In 1929 plaintiff was certified by the civil service board for the bureau of police as eligible for the position of chief of police, and by resolution of council he was duly appointed. He performed the duties of the office until January 7, 1932, when council adopted an ordinance establishing the position of commissioner of police and abolishing that of chief of police. On the same day council appointed John F. Giles commissioner of

police to fill an original vacancy. No charges were filed against plaintiff's conduct of the office, and he was given no hearing when relieved of his position upon the police force. He took no legal action to contest the legality of his removal. In 1936, council adopted an ordinance establishing, inter alia, the position of chief of police and abolishing that of commissioner of police, and the same day adopted a resolution "reinstating" plaintiff as chief of police, effective January 9, 1936. He performed the duties of the office until February 14, 1940, when council adopted a resolution removing him from the police force, effective February 16, 1940. No charges were made against him and he was given no hearing. His dismissal was summary. The City does not contend that plaintiff did not acquire a civil service status in 1929 which adhered to him until at least 1932. Its contention is that in failing to bring mandamus promptly after his removal in 1932, he forfeited his civil service status and that, therefore, his reappointment to the office of chief of police in 1936 did not, in the absence of a re-examination and re-certification, give him such status.

The learned hearing judge says in his opinion: "But we find that by the very ordinance which purported to abolish the position of chief of police, the position of police commissioner was created at the identical salary and with precisely the same duties. This, we think, clearly was but a subterfuge whose purpose and effect was solely to get rid of this plaintiff. The ordinance of January 7, 1932, was not a bona fide measure to fix the number, rank and compensation of the members of the city police force . . . It follows that, if plaintiff had promptly contested his ouster in 1932, he should have succeeded in having the court direct his reinstatement. But he did not do so. He stood by for a period of almost four years while the duties of his office were performed by the police commissioner. This constituted laches and would have defeated any procedure in court brought by him, for example, in 1933, 1934 or 1935."

It is doubtless true that plaintiff would be bound by laches if it were not that on January 9, 1936, the city council by ordinance, having abolished the position of commissioner of police and established that of chief of police, reinstated plaintiff in the position of chief of police. The reinstatement was not preceded by an examination by the civil service board or the certification of plaintiff's name by the Board to council as a person qualified and eligible for appointment to the police force. It was tardy justice, but nevertheless. it is obvious that council recognized the injustice and illegality of its former action and "reinstated" plaintiff to rectify its error.

Plaintiff acquired in 1929 a civil service status, and the primary issue before us is whether that status adhered to him after 1932. For if in 1940, when he was last removed from the police force, his civil service status existed, that removal was illegal for the reason that, admittedly, there was no compliance with the requirements of The Third Class City Law of June 23, 1931, P. L. 932, Article XLIV, section 4408, which prevents, inter alia, the discharge of any employee except for cause after a hearing upon charges before city council.

Plaintiff being entitled to civil service protection in 1932, his removal under the guise of abolishing his office was, in the face of the simultaneous creation of a new office having the same function but a different appellation, a mere pretense and admittedly invalid: *Mack v. Hoover,* 342 Pa. 291, 297-8; *Carey v. Altoona,* 339 Pa. 541, 543-4. The question is whether his appointment in 1936, without recommendation of the civil service commission, was unlawful as a violation of the civil service provisions (section 4401, ff) of The Third Class City Law, or whether it was valid as a bona fide reinstatement. In support of the first-mentioned position, defendant contends that through laches plaintiff abandoned his right to civil service protection, citing *Nicholas v. United States,* 257 U.S. 71, in which an inspector of customs, unlawfully removed from office, was held to be barred by laches by reason of a three years' delay in bringing

suit to recover salary. The equitable defense of laches in mandamus actions is one based on grounds of expediency and public policy, "to the end that if his [petitioner's] contention be justified, the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service": *Arant v. Lane*, 249 U.S. 367, 372. These reasons, while persuasive if appellant had sought reinstatement through mandamus proceedings in 1936, are inapplicable to the instant situation where the City, by voluntary action, sought to rectify its former error and injustice to appellant. We find no violation of the civil service law. The City was fully competent to waive the defense of laches, just as a defendant may waive the defense of the Statute of Limitations: *Smith v. Penna. Railroad*, 304 Pa. 294; *Sheppard's Estate*, 180 Pa. 57. Here the City waived its right to refuse to reinstate appellant (though it did not waive its defense to any claim he might have for salary from 1932 to 1936, as to which he is now barred), and it cannot now withdraw that waiver. Consequently, its action of removing him without cause in 1940 was illegal (*Steiner v. Reading*, 341 Pa. 164; *Seltzer v. Reading*, 340 Pa. 573), and he must be reinstated with pay from February 16, 1940, the day he was wrongfully dismissed.

What we have said in no way conflicts with *Detoro v. Pittston*, 344 Pa. 254, relied on by defendant. That case held that in mandamus proceedings brought to compel petitioner's reinstatement in the police force after summary dismissal, the City had not, by employing him without examination in violation of the civil service provisions of The Third Class City Law, waived the violation as a defense. In the instant case the waiver was not of plaintiff's non-compliance with the civil service requirements, but rather of his failure promptly to assert his rights thereunder.

Order reversed and cause remanded with directions to the court below to enter an order reinstating plaintiff to the position of chief of police with pay from February 16, 1940.