## Silbaugh Appeal

*Ewing K. Newcomer* and *Wade K. Newell,* for appellant.

COTTOM, J., March 7, 1950.—This appeal by William Kenneth Silbaugh, a former police officer of the City of Uniontown, Pa., alleges that his dismissal as a

police officer was unjust, prejudicial and contrary to law.

From the testimony presented the court makes the following

### Findings of Fact

1. William Kenneth Silbaugh was a police officer in the City of Uniontown, Pa., from August 1947 until his discharge effective January 1, 1949.

2. So far as the record shows he had qualified and had been appointed under the Civil Service Act of June 23, 1931, P. L. 932.

3. That on March 31, 1948, for allegedly leaving his beat without having been ordered to do so by his superior and without having reported the fact to his superior, Silbaugh was suspended without pay for five days, after which suspension he resumed his duties as an officer. That appellant was investigating a complaint when he was off his beat for a matter of two or three minutes in company with another officer.

4. That on April 19, 1948, for allegedly sleeping while on duty Silbaugh was suspended without pay, returning to his work as police officer April 23, 1948.

5. Silbaugh was suspended on April 19, 1948, for allegedly sleeping on duty, but the testimony offered does not substantiate this violation of the police regulations.

6. On December 31, 1948, there was delivered to Silbaugh a letter (identified as defendant's exhibit A) dated December 31, 1948, signed by E. L. Sittler, mayor, informing Silbaugh that his services with the Uniontown Police Force had terminated as of that date.

7. The above-mentioned exhibit A was delivered to Silbaugh by Officer Santarella and Officer Chambers, both members of the Uniontown police force, at the instance and direction of E. L. Sittler, mayor.

8. That no charges had been preferred against Silbaugh by the mayor or any other person, before the Council for the City of Uniontown, no hearing had been had, and no action of the city council authorized the discharge prior to the letter of December 31, 1948.

9. That Silbaugh was required to surrender to the proper authorities his uniform and equipment, which was furnished by the city, before he could receive his last pay.

10. That no charges were preferred against Silbaugh until February 17, 1949, on which date he was notified of the date of hearing and given a copy of the charges preferred against him, only after counsel for appellant had demanded that the mayor prefer charges before the city council; a hearing before council was set for February 21, 1949. Appellant and his counsel appeared for the hearing; after the taking of some testimony the hearing was recessed and a final hearing held April 4, 1949.

11. On March 30, 1949, E. L. Sittler, mayor, filed additional charges against Silbaugh which were heard on April 4, 1949, along with other charges filed by the mayor on February 17, 1949, by the members of the city council; council unanimously passed a resolution dismissing Silbaugh from the Police Department of the City of Uniontown, Pa.

12. Council by its resolution stated that it appeared Silbaugh had left his post while on duty, without orders from his superiors; that he was asleep in the Brunswick Hotel while on duty and that he had failed to pay his just debts, which conduct is detrimental to the service of the Police Department.

13. That E. L. Sittler, mayor, had no knowledge that Silbaugh owed any just debts at the time of his discharge on December 31, 1948; this information having been obtained after the discharge and before the filing of the charges on February 17, 1949.

14. Two of the charges filed against Silbaugh and considered by council were those for which he was suspended by E. L. Sittler, mayor, without pay in March and April of 1948, more than eight months before his discharge by the mayor.

15. There is no testimony in the record of any improper conduct on the part of Officer Silbaugh after his suspension in April and his resuming his duties until his discharge December 31, 1948.

16. Of the alleged debts owed by appellant, as charged by Mayor Sittler in the charges filed February 17, 1949, two were due prior to appellant's appointment as a police officer and the third is a disputed account as is shown by the testimony.

17. The other alleged bills owed by appellant as charged by the mayor came to his knowledge after the discharge of appellant and seems to the court to have been filed as additional charges in an attempt to justify the mayor's illegal discharge of Silbaugh.

### Discussion

Officer Silbaugh, after being appointed a regular police officer for the City of Uniontown, and while on duty, did leave his beat in March 1948 in company with another officer, a motorcycle patrolman, riding in the motorcycle sidecar, while investigating a complaint that certain young men, riding in an automobile, had molested the complaining witness. After an investigation on and off his beat the young men were located on his beat and the complaining witnesses refused to prosecute; the officer not having observed the acts of the young men, reprimanded them and no arrest followed. For this alleged offense the officer was suspended for five days without pay, and without investigation.

To this charge the court is satisfied that appellant was acting in the line of duty when he left his beat and it appears that appellant was unjustifiably suspended

in this instance, and that this accusation should not have been considered by council. An officer after receiving a complaint should not have to receive his superior's approval before starting an investigation. To so hold is absurd and would prohibit an officer from leaving his stated beat to arrest for a crime he might have seen committed on another officer's beat, or one reported to him, where apprehension could be made without delay off his beat.

About the middle of April 1948 Officer Silbaugh while on duty, on his beat, entered the Brunswick Hotel about 4 a. m., visited the lavatory, returned to the hotel lobby, sat in one of the lobby chairs directly in front of the large window next to Main Street; while conversing with the night clerk, night chief Malik entered the lobby, called Silbaugh outside and they entered a police car and proceeded to the city police station. The testimony of the night clerk at the hotel clearly states that the officer was not asleep, that they were conversing. A short time after Silbaugh left the hotel he returned and requested a letter from the clerk addressed to the mayor as to whether he had been sleeping, and further stated he had been suspended. The letter was written by the night clerk to the mayor and is identified as defendant's exhibit B. For this alleged offense, Silbaugh was again suspended without pay for three days, after which time he was reinstated.

As to whether Silbaugh was rightfully suspended for the above alleged offense we are not here attempting to decide, although it does not appear justifiable, but regardless of the merit of the alleged violations he was suspended by the mayor, served his suspensions, was reinstated and performed his duties for some eight months before being discharged. When the mayor finally preferred charges against Silbaugh on February 17, 1949, these same charges were filed against

Silbaugh in order to substantiate the mayor's position in the unlawful discharge of this officer. Under all the circumstances of this case the court does not feel that there was such a continuity of bad behavior and misconduct which warranted the filing of these charges; the mayor in his official capacity as director of the department of public affairs had legally penalized the officer for the alleged violations of the police regulations some eight months previous and to again attempt to penalize for the same offenses appears to be attempting double punishment for the alleged offenses. The court is of the opinion that the members of the city council should not have considered these charges.

On February 17, 1949, one month and seventeen days after Silbaugh's dismissal, E. L. Sittler, as mayor, caused to be served on the officer a notice of the time and place of the hearing on the charges preferred by himself as mayor and director of the department of public affairs, and before the adjourned hearing filed additional charges, on after-acquired evidence, in order to substantiate or justify his unlawful discharge of appellant.

It is significant to note that Silbaugh was discharged on December 31, 1948, and that on February 17, 1949, Silbaugh was then notified by Mayor Sittler that he was suspended without pay pending disposition of charges filed before the City Council. By this notice of course it can be readily understood that the mayor was then trying to comply with the requirements of the Civil Service Act of 1931, as amended.

The Civil Service Act, June 4, 1941, P. L. 83, as amended, sec. 1, 53 PS §12198-4408, covers the suspension and discharge of civil service employes and reads as follows:

"All employees subject to civil service shall be subject to suspension by the director of the department for misconduct, or violation of any law of this Com-

monwealth, any ordinance of the city, or regulation of the department, pending action by the city council upon the charges made against any of such employees. On hearing before the city council, where they may be represented by counsel, they may be fined or suspended for a period not exceeding thirty days with or without pay, or they may be discharged by city council, if found guilty of the charges made against them."

The procedure of the above act is mandatory. In the instant case the mayor by his summary discharge of Silbaugh in no way complied with these requirements, until forced to do so by counsel representing Officer Silbaugh and then included charges that he had no knowledge of at the time of discharge in order to justify his summary discharge of appellant. The first charges filed February 17, 1949, included matters which had been summarily disposed of by the mayor under the authority of the above Act of 1941, dealing with suspensions without charges being preferred before council, which portion of the act reads as follows:

"The director of each such department may, for misconduct or violation as aforesaid, suspend any employee of such department for a period of ten (10) days, with or without pay, without preferring charges and without a hearing of council."

The other charges were for nonpayment of bills incurred prior to his being employed by the city as a police officer, and which was or could have been, within the knowledge of the city council before his appointment as a regular officer.

A municipal employe who has been discharged in the absence of charges against him and without any hearing in violation of section 4408 of the Act of June 23, 1931, P. L. 932, is entitled to reinstatement. Plaintiff could only be discharged after hearing, and since it is admitted that no charges were made against him and that he was discharged without any hearing, he

must be reinstated: Seltzer v. Reading et al., 340 Pa. 573.

A city cannot remove a civil service employe from office without cause and an employe who is illegally removed must be reinstated with pay from the date of such removal: Schearer v. Reading, 346 Pa. 27.

The court has been unable to find any of the decisions in point with the issues of this case, since the Civil Service Act of June 23, 1931, P. L. 932, as amended, but in the case of Truitt v. Philadelphia, 221 Pa. 331, the employe was summarily dismissed without complying with the Civil Service Act of 1906, P. L. 83, and the court held (p. 337) : "The duty of the officer in appointing to or dismissing from the service of the city is to comply with the statute and in good faith yield obedience to its provisions, so that the intention of the legislature may be fully carried out. . . . The statute not only requires that a just cause shall exist to justify the removal of an employee, but it provides the way in which the incompetent or inefficient employee shall be discharged. No officer or employee shall be removed, says the Act, 'until he shall have been furnished with a written statement of the reasons for such action, and been allowed to give the removing officer such written answer as the person sought to be removed may desire'. This language is explicit and not to be misunderstood. It is an emphatic declaration by the legislature prohibiting the removal of any employee except as authorized by its provisions. . . . Not only must the removing officer assign his reasons in writing for his intended action in dismissing the employee, but, before acting, he must also give to the employee an opportunity to answer the charges preferred against him."

In this case the mayor's notice of dismissal says, "for reasons which I am sure you fully understand", however, no testimony was offered by the mayor to

explain this statement. No evidence was offered to show the officer's unfitness, inefficiency or incompetency to perform his duties other than that he had been suspended some eight months before as above mentioned.

In the case Commonwealth ex rel. v. Philadelphia et al., 273 Pa. 332, the court held that proper executive officers may discharge their employes subject to the limitations expressly imposed by statute. This decision is based on section 18 of the Charter Act of June 25, 1919, P. L. 581.

In the case of Carey v. Altoona et al., 339 Pa. 541, the court held: "The reasons prompting the removal of an employee may be judicially investigated in order to ascertain whether they were such as are made illegal by statutory provisions."

The Civil Service Act of June 4, 1941, P. L. 83, does not empower the mayor as director of the department of public affairs to discharge a civil service employe; any such discharge by the mayor is without any legal authority and is illegal. The act authorized the city council to discharge after a hearing held on charges preferred against an employe, if found guilty of the charges made against such employe.

The mayor as director of the department of public affairs acted beyond the scope of his authority in discharging the appellant without a hearing before council; the mayor's subsequent filing of charges, after demand by appellant, and then consideration by council does not cure this procedural defect.

It does not appear that the council had a right to consider the charges filed against appellant after his illegal discharge and before appellant had been reinstated as a police officer, the procedure as outlined in the act had not been followed in the proper way and council by its resolution to dismiss from service cannot correct the wrongful discharge by the mayor and

thus bring the proceedings within the mandatory provisions of the Civil Service Act.

Under the authority given the court in hearing the appeal, the court shall hear the charges made against the officer de novo. The only issue to be decided by the court is whether the action of the council shall be affirmed or modified in any respect or whether the charges should be dismissed.

Having heard all the testimony and given consideration thereto, having found that appellant was illegally discharged by the mayor and not in accordance with the provisions of the act of assembly the appeal is sustained.

### Order

And now, March 7, 1950, after consideration, the appeal of William Kenneth Silbaugh, from the action of the City Council of the City of Uniontown, Pa., in dismissing him as a police officer employed by that city, is hereby sustained and it is further ordered that William Kenneth Silbaugh be reinstated by the city council as a police officer in the City of Uniontown, Fayette County, Pa.