# Ferguson v. City of Philadelphia et al.

*Lemuel B. Schofield,* for plaintiff.

*J. F. Ryan* and *Frank F. Truscott,* for defendants.

MACNEILLE, P. J., and MILNER, J., December 12, 1951.—This is an action in mandamus in which plaintiff seeks to compel his reinstatement as a lieutenant of detectives in the bureau of police. The complaint in mandamus was filed on August 14, 1951, and defendants filed preliminary objections to the complaint on August 31, 1951. These preliminary objections were argued before the court en banc and were overruled at the bar of the court, it appearing that mixed ques-

tions of law and fact were involved. Defendants then filed their answer and plaintiff has moved for summary judgment (see Pa. R. C. P. 1098). Defendants' answer admits the material and essential allegations in plaintiff's complaint and we must determine whether, upon the present state of the pleadings, plaintiff is entitled to immediate relief.

Taking all averments in the answer which are well-pleaded to be true the following pertinent facts appear.

Plaintiff, Clarence J. Ferguson, commenced service as a policeman for defendant city on August 27, 1919. In March 1930 he was promoted to the rank of detective; in March 1940 he was promoted to the rank of detective sergeant and in April 1948 he was appointed lieutenant of detectives, vice squad. Plaintiff's initial appointment in the bureau of police and his promotion to detective were made as a result of his taking and passing the required civil service examinations. His promotions to sergeant of detectives and to lieutenant of detectives, vice squad, were made after exemption of these positions by the civil service commission. Defendants' answer states that the latter exemption was granted only during the time that plaintiff held the particular position of "Lieutenant of Detectives, Vice Squad" because of testimony produced as to his experience and qualifications for the particular work of the vice squad.

By an ordinance dated November 28, 1950, city council amended the budget appropriation for 1950 for the Department of Public Safety, bureau of police, as follows:

"In Section 30, providing for an appropriation to the Department of Public Safety, Bureau of Police, Item A-10, by striking out:

22 Lieutenant of Detectives (13-10)     10 at $4,510
23 Lieutenant of Detectives (13-10)     1 at $4,410
    Vice Squad

and inserting in lieu thereof;

22 Lieutenant of Detectives (13-10)     10 at $4,510
                                         1 at $4,410"

On the following day, November 29, 1950, the director of public safety, Samuel H. Rosenberg, notified plaintiff that under the ordinance "the position of lieutenant of detectives, vice squad, bureau of police, has been eliminated" and that he was therefore "dropped back to the position of sergeant of detectives". Plaintiff was directed to report to the third detective division as a sergeant of detectives and complied with the direction.

Plaintiff immediately objected to his removal as a lieutenant of detectives and requested a hearing before the civil service commission. After a hearing the civil service commission on December 15, 1950, issued a ruling requiring plaintiff's reinstatement as a "Lieutenant of detectives at the annual salary of $4,410." The order was as follows:

"After a hearing by the civil service commission held on December 14, 1950, the commission has voted to sustain Clarence E. Ferguson, lieutenant of detectives, in his appeal from the order of the director of public safety, dated November 29, 1950; 'dropping him back to the position of sergeant of detectives, bureau of police, effective November 28, 1950'."

No attempt was made to appeal from the commission's order.

Director Rosenberg refused to comply with the commission's order and it is now argued by the city, as a legal conclusion, that the commission's order was without legal effect; that the commission could not require reinstatement to a position which had been abolished nor could it require appointment to another position to which the director did not desire to appoint him; that plaintiff never qualified for the position of lieutenant of detectives by examination or exemption.

In June 1951 the director of public safety requested the civil service commission to exempt, inter alia, the position of lieutenant of detectives so as to permit him to appoint an individual other than plaintiff to the position. Plaintiff in the meantime performed the duties to which he was assigned as a sergeant of detectives but constantly maintained that he was entitled to receive the salary and emoluments of the office of lieutenant of detectives at an annual salary of $4,410. Plaintiff, by a letter dated June 28, 1951, advised the civil service commission of his objection to any favorable action upon the director's request; he referred to the commission's order of December 15, 1950, and claimed that he was entitled to be appointed to the existing vacancy of lieutenant of detectives and requested opportunity to be heard in the assertion of his rights.

At a hearing held before the civil service commission on July 11, 1951, plaintiff, by his counsel, objected to the director being permitted to select anyone else for the position of lieutenant of detectives. The director thereupon informed plaintiff, while the hearing was in progress, that since he was not accepting the position of sergeant of detectives the elimination of his former position removed him from the roster of the police department. On the same day the director sent a letter to plaintiff advising him that he was thereby "removed from the roster of the bureau of police as of November 28, 1950." After receiving this letter plaintiff continued to report for duty but he was not given any assignments.

Plaintiff averred that he faithfully performed the duties of the various offices he held in accordance with the rules and regulations of the bureau of police. Defendants in their answer state they have no personal knowledge of such averment and can neither affirm nor deny it. Such answer cannot be accepted as made

in good faith since it is obvious that defendants have full access to all official data as to the manner in which plaintiff has performed his duties and the duty to so inform themselves even aside from this proceeding. See Tide Water Associated Oil Co. v. Kay, 168 Pa. Superior Ct. 263, 266 (1951) holding insufficient an allegation of no knowledge which on its face is untrue.

No charges were ever preferred against plaintiff and he was never accorded a hearing on any charges before the civil service commission. Defendants contend that it was not "necessary to file charges against the plaintiff or hold any hearings in regard to him"; that he was removed because the position he held was abolished by city council.

We have carefully reviewed the matter before us and are of the opinion that plaintiff is entitled to immediate reinstatement under the civil service commission's order of December 15, 1950. The director of public safety, by the clear provisions of the applicable statute, was obliged to obey the commission's ruling; no right of appeal from the commission's order is conferred upon any of defendants. The director cannot confer upon himself a right of review and appeal by simply refusing obedience to the commission's order and thereby compelling an improperly discharged employe to initiate a mandamus proceeding in which the director may relitigate the issue.

The Act of June 25, 1919, P. L. 581, art. XIX, sec. 18, as amended by the Act of July 29, 1941, P. L. 579, sec. 1, 53 PS §3338, provides as follows:

". . . No police officer or fireman, except those dismissed during probationary period, shall be removed or discharged, except for cause, upon written charges, and after an opportunity to be heard in his own defense. Such charges may be filed by any superior officer or by any citizen or taxpayer, and shall, within thirty days after filing, be heard, investigated, and

determined by the commission or by one of the commissioners or by some person or board appointed by the commission to hear, investigate, and determine the same. . . . The finding and decision of the commission or commissioner or of such person or board, when approved by the commission, shall be certified to the appointing authority, and shall be forthwith enforced by such authority."

Nowhere in the Act of 1919 is there any provision for a review of the commission's orders and we must conclude that the legislature intended that the commission's ruling was to be final. It is unnecessary, for our purposes, to consider the decisional law which has evolved a limited review where the *discharged employe* collaterally attacks the commission's order by mandamus or a writ of alternative mandamus. See Raffel v. Pittsburgh et al., 340 Pa. 243 (1940) ; Caldwell v. Fairley, Director, et al., 363 Pa. 213 (1949).

Our research has not uncovered a single case wherein an appeal, in such circumstances, was taken or permitted, directly or indirectly, by the municipality from the order of the person or body charged with the determination of the propriety of removal. We have reviewed the civil service laws and decided cases in relation to first, second and third class cities, and a brief reference to the statutes and pertinent cases is of value.

In Bradycamp v. Metzger et al., 310 Pa. 320 (1923) the Supreme Court (in a per curiam opinion) affirmed the order of the lower court quashing an alternative writ of mandamus, observing that the requirements of the then third class law had been fully complied with. The court stated at page 322:

"Mandamus will lie to compel the performance of a ministerial duty required by law, but not the review of a decision of an administrative body invested with discretion, which has already acted in the premises in

accordance with law. 'The court cannot substitute its judgment, as to what should be just cause, for that of the city authority, unless there is a manifest abuse of discretion': Smith v. Phila., 305 Pa. 503, 505, citing Shellenberger v. Warburton, 279 Pa. 577. 'Where a person or body is clothed with judicial, deliberative or discretionary powers, and he or it has exercised such powers according to his or its discretion, mandamus will not lie to compel a revision or modification of the decision resulting from the exercise of such discretion, though, in fact, the decision may have been wrong': Souder v. Phila., 305 Pa. 1, 8, and cases cited therein."

When the Bradycamp case arose the Third Class City Law of June 23, 1931, P. L. 932, sec. 4408, did not confer any right of appeal upon a discharged employe and the court properly refused to review the finding of the city council (the body charged with investigation of charges against police officers) properly made.

Following the Bradycamp case the legislature passed the Act of May 31, 1933, P. L. 1108, sec. 10, 53 PS §8480*h*, which specifically granted a right of appeal (to the court of common pleas and the Supreme Court) to *persons removed* as employes of *fire bureaus*. In Daley v. Pittston et al., 334 Pa. 281, appeals were taken by *police officers* challenging the validity of certain discharges in a city of the third class. Charges had been duly made, hearings conducted and findings entered by the proper authorities. The Supreme Court affirmed the lower court's order which was based on the fact that the Act of 1931 had been complied with and on the authority of the Bradycamp case, Mr. Justice Linn, clearly perceiving the effect of the presence or absence of an appeal provision, succinctly states (page 283):

"Since [the Bradycamp] case arose, the legislature

has provided by the Act of May 31, 1933 P. L. 1108, 53 P.S. section 8479 et seq. (Crawford v. Clairton City, 334 Pa. 120) that firemen in the cities of the third class if 'removed, discharged, or reduced in rank or pay' may obtain a hearing before the Civil Service Commission with the right to appeal to the common pleas. The significant thing, for present purposes, is that in making the change for firemen, the legislature left policemen governed by Bradycamp's case."

The Act of May 31, 1933, as amended, was repealed insofar as it applied to cities of the second class by section 9 of the Act of June 27, 1939, P. L. 1207, which detailed the proceedings for removal, reinstatement, reduction, etc., of fire bureau personnel in cities of the second class. The Act of 1939 is significant insofar as it spelled out the right of appeal. It gave a right of appeal (to the court of common pleas and the Supreme Court) to *the person removed* if the civil service commission *sustained* the action of the removing office. The act (in section 7) specifically provides, "Neither the City, the removing officer, nor any person other than the employe so charged shall have any right to appeal either to the court of common pleas or to the Supreme Court of Pennsylvania." [1]

---

[1] See on dismissal and removal of police in second class cities the Act of March 7, 1901, P. L. 20, as last amended by the Act of June 15, 1937, P. L. 1761, 53 PS §8458 et seq.; Act of April 11, 1931, P. L. 38, as last amended by Act of April 29, 1937, P. L. 544, 53 PS §10801 et seq.; see also Act of May 23, P. L. 206, sec. 20, 53 PS §9383. The Third Class City Law of June 23, 1931, P. L. 932, sec. 4408, as amended by the Act of June 4, 1941, P. L. 83, sec. 1, 53 PS §12198-4408, now governing the suspension, and discharge of civil servants provides for an appeal by "any policeman" from the action of city council to the court of common pleas which shall hear the charges de novo. As to State administrative bodies, The Administrative Agency Law of June 4, 1945, P. L. 1388, sec. 41 et seq., 71 PS §1710.41 et seq., specifically provides for appeals by "any person aggrieved [by a State administrative adjudication] who has a direct interest in such adjudication" to the Court of Common Pleas of Dauphin County.

As we have indicated, the Act of 1919, relating to first class cities, by omission, achieved the same effect as the 1939 statute relating to second class cities and precluded any appeal by the city or the removing officer from the order of the civil service commission. It was the intention of the legislature that the civil service commission be the final authority in determining the right to remove civil service personnel. It is not to be supposed that the director of public safety, by refusing obedience to the commission's order, apparently lawful on its face, may by indirection secure the effect of a municipal appeal.

In Caldwell v. Fairley, Director, et al., 363 Pa. 213-14 (1949), the Supreme Court approved the following language:

" 'While a writ of mandamus may compel action where a right is clear, it cannot be treated as an appeal or writ of error to review the discretionary acts of subordinate tribunals.' Homan v. Mackey, 295 Pa. 82; Credo v. Pittsburg, 355 Pa. 369. Our obligation here, and the limit of our authority here, is to review the record and determine whether the dismissal was according to law. 'If there is admissible evidence, the weight of which the court is without authority to consider, to move the deliberative powers of the Commission, without manifestly abusing its discretion, in sustaining or reversing the action of the Director then the petition should be refused; if not, it should be granted.' Raffel v. Pittsburgh, 340 Pa. 243."

The question proposed by the city is that the civil service commission's order was without legal effect because the position to which his reinstatement was ordered was abolished; that plaintiff was not qualified for the position of lieutenant of detectives by examination or exemption. This is apparently intended as a challenge to the commission's "jurisdiction" in the matter. We need not consider nor conjecture whether

there is any effective means whereby an appointing authority may maneuver a review of the commission's rulings in such matters. In this case such review is not available. In the case of an order of reinstatement, as well as an order of removal or demotion, our only concern is whether "the [reinstatement] was according to law." The answer does not set forth any facts indicating a defect in procedure nor does it set forth any facts upon which a manifest abuse of discretion is to be predicated. See Crofut v. Philadelphia, 276 Pa. 366 (1923). There is no contention that there was insufficient evidence before the commission upon which to predicate a finding that plaintiff was improperly demoted. It was for the commission and the commission alone to determine whether or not plaintiff had been removed or demoted and it was for the commission to determine whether or not the plaintiff was qualified for the position of lieutenant of detectives.

Whether plaintiff was demoted or whether his position was abolished was a question of fact [2] in these

---

[2] Much has been written on the subject of the scope of review of an administrative determination of so-called jurisdictional fact. See generally John Dickinson, Judicial Review of Administrative Determinations, a Summary and Evaluation, 25 Minn. L. R. 588 (1941); Landis, Administrative Policies and the Courts, 47 Yale L. J. 519 (1938); Albertsworth, Judicial Review of Administrative Action by the Federal Supreme Court, 35 Harv. L. R. 127 (1921); Final Report of the Attorney General's Committee on Administrative Procedure, pages 75-95 (1931); Note, Judicial Review of Administrative Findings on "Fundamental" or "Jurisdictional" Facts, 21 Calif. L. Rev. 266 (1933); St. Joseph Stock Yards Case, 298 U. S. 38 (1936); Perkins et al. v. Elg, 307 U. S. 325; Interstate Commerce Commission v. Northern Pacific Railway Company, 216 U. S. 538 (1910); see also Crowell, Deputy Commissioner, v. Benson, 285 U. S. 22 (1932); Ohio Valley Water Company v. Ben Avon Borough et al., 253 U. S. 287 (1920); John Dickinson, Crowell v. Benson, Judicial Review of Administrative Determinations of Questions of "Constitutional Fact," 80 U. of Pa. L. R. 1055 (1932); Note, Finality of Administrative Findings of Fact since Crowell v. Benson, 24 Va. L. R. 653 (1938).

circumstances and we must conclusively assume that the commission correctly resolved that question insofar as any challenge by the city is concerned. The director of public safety is without standing to challenge the decision of the civil service commission within the scope of its authority, in the absence of such proof of fraud or collusion as to nullify its right to render a decision in the matter. One level of the administrative-executive branch of a governmental unit is without right, power or authority to challenge the decision of a higher administrative echelon of that same unit acting within the scope of its authority. The director of public safety is appointed by the mayor and the civil service commission is appointed by city council; neither may infringe upon the functions of the other. See for comparison Mills Unemployment Compensation Case, 362 Pa. 342 (1949), in which the Supreme Court held that the Department of Labor and Industry did not have the right to appeal to the Superior Court from a decision of the Unemployment Compensation Board of Review in the absence of statutory authority for such appeal. See also Kaufman Construction Company v. Holcomb et al., 357 Pa. 514 (1947), where the subject of appeal is exhaustively considered by Mr. Justice Horace Stern.

The director of public safety has an interest in the quality of personnel staffing the police department and the removal of police officers, but it is for the legislature to determine the measure of such power, the manner of its exercise and in whom such power shall be vested: Shellenberger v. Warburton et al., 279 Pa. 577 (1924); Commonwealth ex rel. v. Philadelphia et al., 273 Pa. 332, 335, 336 (1922). When the Act of 1919 was originally adopted the power to remove civil servants other than police officers and firemen was vested exclusively in the appointing officer. In Shellenberger v. Warburton, supra, the court stated:

"The legislature did not provide a tribunal to review the acts of the removing officer; in fact, with the limitation just mentioned [religious or political cause] he is the sole judge as to the sufficiency of the reason."

Under the Act of 1919 as presently amended, the civil service commission is the final disciplinary authority over civil service personnel and has always been such final authority as to police officers and firemen. Finality of decision may be vested in an appropriate case in an administrative body; neither judicial process nor a right of appeal is essential to due process of law: Reetz v. Michigan, 188 U. S. 505 (1903).

Plaintiff, by pleading the order of the civil service commission, which is admitted, establishes his right, prima facie to a peremptory writ of mandamus. It is incumbent upon defendants to plead facts justifying their refusal to obey that order. They have not set forth such facts. Our review of the record, even assuming defendants had a right to this indirect appeal, would be no greater than as set forth in Caldwell v. Fairley, supra. On the facts pleaded we could not hold that the commission abused its power or acted arbitrarily or capriciously in finding that plaintiff was improperly removed.

Defendants' answer does not set forth any distinction in duties and qualifications between lieutenant of detectives and lieutenant of detectives, vice squad. As we shall hereafter indicate, we have concluded that the pleadings sufficiently indicate that the position of lieutenant of detectives held by plaintiff was not effectively abolished.

There is no doubt of, and plaintiff does not deny, the power of city council to abolish an office and thereby terminate the services of an incumbent: Essinger v. New Castle, 275 Pa. 408 (1923); Leary v. Philadelphia et al., 314 Pa. 458 (1934); see also Simasek et al. v.

McAdoo Borough et al., 352 Pa. 306 (1945). However, it is equally well settled that the abolition of an office must be in good faith and not as a subterfuge to effect the removal of a civil servant otherwise within the protection of the civil service law. In Schearer v. Reading et al., 346 Pa. 27 (1942), plaintiff was appointed chief of police in 1929. In 1932 the position of chief of police was abolished by ordinance and the position of commissioner of police simultaneously established. In 1936 the office of chief of police was reestablished and that of commissioner was abolished and plaintiff was reinstated as chief of police. Plaintiff was removed from office in 1940. Under the facts appearing if the removal in 1932 was proper plaintiff did not acquire civil service status but if the removal was improper his reinstatement in 1936 had vested him with the civil service status he had acquired in 1929. The court, holding the removal in 1932 to have been improper, stated through Mr. Justice (now Chief Justice) Drew (at p. 30):

"Plaintiff being entitled to Civil Service protection in 1932, *his removal under the guise of abolishing his office was, in the face of the simultaneous creation of a new office having the same function but a different appellation, a mere pretense and admittedly invalid.*" (Italics supplied.)

In Mack v. Hoover et al., 342 Pa. 291 (1941), an ordinance of the City of DuBois (a city of the third class), purported to reduce the number of police officers and provided for the transfer of a sanitary inspector to the bureau of police. Plaintiff was removed as a result of the apparent reduction in force. The Supreme Court held that the ordinance was a mere subterfuge to relieve a patrolman of his job and put someone else there in his stead. Mr. Justice (later Chief Justice) Maxey stated (pp. 296-97):

"The ordinance in question has the *appearance* of

legality only so far as it *purports* to be an *economic measure*. It has the substance of illegality, and in sections 3 and 5 it has also the surface of illegality. The law does not permit the City of DuBois to remove under any guise a policeman in order to give his status and emoluments to a sanitary inspector."

The court quoted the language of Judge Cardozo from People v. Williams, 213 N. Y. 130, 107 N. E. 49, as follows (p. 297) :

" 'We think that if a new position, similar to the relator's, was created at the same time that the relator's was abolished, the Commissioner was required, in filling the new position, to prefer the relator over others. *The law will not permit him, for the purpose of ousting the relator and installing someone else to reduce the positions with one hand and increase* them with the other'." (Italics supplied.)

In Carey v. Altoona et al., 339 Pa. 541 (1940), the court sustained a reduction in rank resulting from elimination of the office of chief of police. Mr. Justice Horace Stern pertinently stated (p. 543) :

" 'Good faith,' in such a case, enters only into the determination of the question whether the office has really been abolished; *whatever be the language of the enactment purporting to effect the abolition, if the office is substantially recreated, though under a different name, with a new appointee performing the same duties as the prior incumbent, the court will invalidate such legislation as being nothing more than a pretense.* But where, as here, the position and its emoluments are wholly and unquestionably abolished, and no new rank in the police force, either in name or substance, is created similar to that which is being discontinued, it is not for a court to say that the motive underlying the enactment of the ordinance may have been personal or political rather than a disinterested

desire to further the public welfare." (Italics supplied.)

Applying the principles of these cases to the matter before us it is obvious that plaintiff's removal was improper. When plaintiff's position was abolished there was simultaneously created a new office having a different (but almost the same) appellation. The salary remained identical. Similarity between the abolished and created offices is sharply indicated by the fact that the salary of $4,410, remained conspicuously different from the 10 other positions of lieutenant of detectives, all of which provided for a salary of $4,510. The inference is overwhelming that the only change made was one of words. Neither in defendants' answer nor supporting briefs is there any indication of significant difference in duties and qualifications.

The Ordinance of November 28, 1950, upon which the director of public safety apparently relied in support of his assumption that plaintiff's position as lieutenant of detectives was eliminated, was merely an ordinance making appropriations to cover items in the city budget. Exactly the same number of lieutenants of detectives were retained on the rolls of the bureau of police as had previously existed and been provided for, and it is significant that the same salaries were fixed, viz., 10 at $4,510 and 1 at $4,410, and there is nothing in the ordinance defining their duties or differentiating them in any way, except the difference in salary noted. The only reasonable and fair inference from these facts is that council was retaining the same positions and that the position held by plaintiff was not eliminated. The only other inference that may be drawn from these facts is that the omission of the words "Vice Squad" after designation "Lieutenant of Detectives", for which a salary of $4,410 is fixed, was a mere subterfuge resorted to

in an unfair attempt to illegally deprive plaintiff of his civil service status. In either event, the director of public safety's assumption was an erroneous one.

Defendant's real contention is set forth in one of its brief as follows:

"At the hearing on plaintiff's application for exemption to the position of lieutenant of detectives, vice squad, it was testified that he was the only sergeant of detectives qualified for this particular office because of his service in the vice squad; had the position been merely lieutenant of detectives for general assignments, 'there were some 200 other persons who possessed the minimum qualifications' for the job; Butcher v. Civil Service Commission, 69 D. & C. 34, 36." and

"Plaintiff obtained his promotion to 'lieutenant of detectives, vice squad, because he was particularly fitted for that position with its definite duties. For the position of 'lieutenant of detectives', it has never been contended that he has such unique ability or experience. There are many other sergeants of detectives who are qualified. In fact, one of them has been appointed to that particular position."

Defendants are precisely incorrect as to the question involved. The issue is not whether other persons are qualified for the position plaintiff claims or whether he had unique ability for the vice squad position but whether he is qualified for the substantially similar position created in substitution for his vice squad position. The case of Butcher v. Civil Service Commission, 69 D. & C. 34, on which defendants rely and to which they direct our attention, establishes affirmatively that plaintiff is qualified for the position of lieutenant of detectives. It was admitted and found as a fact in that case that not only did plaintiff possess the minimum qualifications for lieutenant of detectives but

he had the necessary *additional* qualifications "for duty with the vice squad". It was indicated that the position of lieutenant of detectives was "included" in the vice squad position.

The fact that plaintiff's initial appointment as a lieutenant of detectives was only by way of appellation in a specialized capacity did not make him any the less a lieutenant of detectives. Nor did the fact that his initial appointment was by virtue of an exemption proceeding constitute it a lesser form of appointment resulting in any impairment of the rights assured to all cvil service personnel. There is no contention or suggestion that plaintiff's original appointment as a lieutenant of detectives for the vice squad was intended to circumvent a competitive examination or to improperly "jump" him over other eligibles. In such circumstances there is nothing in the law requiring or justifying plaintiff's demotion or removal from a position for which he is otherwise qualified because he ceases to perform a more specialized service in that capacity.

We may add that there is nothing to affirmatively indicate that city council intended to remove plaintiff under the pretext of abolishing his position. The familiar rule requires that we construe the ordinance so that it may be deemed valid. Insofar as defendants aver in paragraph 9 of their answer that council eliminated the particular and special position of plaintiff and increased the number of lieutenants of detectives for general duty from 10 to 11 such duty of construction is for the court. We must construe the ordinance as constituting merely a change of designation specifically intended to preserve the position held by plaintiff.

Insofar as plaintiff's *total* removal from the police roster is concerned it is clear that the director has no power to so rule. In any view of the case plaintiff

was and is entitled to retain the position of sergeant of detectives. Article XIX, sec. 18, of the Act of 1919, explicitly provides that "No police officer . . . shall be removed or discharged, except for cause, *upon written charges, and after an opportunity to be heard in his own defense.*"

Since the decision in Simmler v. Philadelphia et al., 329 Pa. 197 (1938), distinguishing and/or overruling McCoach v. Philadelphia, 273 Pa. 317 (1922), and Osterheldt v. City of Philadelphia, 113 Pa. Superior Ct. 8 (1934), it should be clear that the procedure provided for by the statute must be followed. See Casper v. Philadelphia, 55 Pa. Superior Ct. 266 (1913); Menge v. City of Philadelphia et al. (No. 1), 36 D. & C. 352 (1940). See also Seltzer v. Reading et al., 340 Pa. 573, and Silbaugh Appeal, 71 D. & C. 415 (Fayette Co., 1950), decided under similar statutes. It cannot be suggested that plaintiff was not entitled to a hearing because of the asserted claim that his position as a lieutenant of detectives, vice squad, had been abolished. On July 11, 1951, when the director advised plaintiff that he was removed from the police roster, plaintiff was performing the duties of a sergeant of detectives within the full protection of the civil service provisions of the city charter. No fiction of retroactive removal could forfeit that protection.[3]

---

[3] Defendant's brief states that plaintiff refused to accept the position of sergeant of detectives and perform the duties of that position. Plaintiff's complaint explicitly sets forth that plaintiff performed the duties and obligations to which he was assigned as sergeant of detectives (par. 14) and that after his purported total removal he continued to report for duty (par. 19). The answer specifically admitted "that the plaintiff reported for duty and performed duty as a sergeant of detectives" (par. 14) and that he "reported for duty" after July 11, 1951. The director's supposition that a claim made in good faith of entitlement to the position of lieutenant constituted a refusal of the position of sergeant was patently erroneous.

Finally, aside from the obvious procedural defects in the purported removal of plaintiff from the position of sergeant of detectives, plaintiff, in the absence of charges showing "just cause" for removal was entitled (even if we were to assume that the position of lieutenant of detectives, vice squad, was effectively eliminated) to be appointed to the next highest available position in the bureau of police for which he was qualified. See Petrillo v. City of Farrell et al., 345 Pa. 518 (1942); McGuckin v. West Homestead Borough, 360 Pa. 311 (1948).

### Order and Judgment

And now, December 12, 1951, plaintiff having moved for summary judgment, upon consideration of the pleadings filed herein, it is ordered and directed that a peremptory writ be awarded and that the prothonotary issue the same forthwith upon defendants, the City of Philadelphia, Bernard Samuel, Mayor of the City of Philadelphia, and Samuel H. Rosenberg, director of the Department of Public Safety of the City of Philadelphia, directing defendants to forthwith reinstate plaintiff, Clarence J. Ferguson, to the roster of police in the Bureau of Police of the Department of Public Safety of the City of Philadelphia, and forthwith restore him to the position of lieutenant of detectives in the bureau of police of the Department of Public Safety of the City of Philadelphia as of November 28, 1950, at an annual salary of $4,410, with all the rights, salaries and emoluments appertaining thereto. Costs of this proceeding to be paid by defendant, City of Philadelphia.