John S. Wolf, James S. Brewster, Henry E. Simone, Glenn Eastland, Earl H. Stockdale, J. K. Kessler, William S. Dyson, Richard L. Rigatti, Samuel Joseph Fair, Mary Ann Fair, William Downing, Melvin F. Woods, Charles A. Nix, Peter E. Midock, for Themselves and All Others Similarly Situated, Appellants, *v.* Frank M. Tominac, Raymond Staniszewski, William J. Barnes, M.D., John L. Ferber, Richard J. Stampahar and The Township of O'Hara, a Municipal Corporation, Appellees.

Argued November 7, 1973, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MEN-

CER, ROGERS and BLATT. Judge CRUMLISH, JR. did not participate.

*James Victor Voss,* with him *Joseph T. Kosek, Jr.* and *Neely and Voss,* for appellants.

*Francis P. Massco,* Solicitor, for appellee.

*Stanford A. Segal,* with him *Gatz, Cohen, Segal & Koerner,* for amicus curiae, Western Pennsylvania Chiefs' of Police Association.

OPINION BY JUDGE WILKINSON, December 19, 1973:
On December 2, 1971, appellants commenced the two actions in the Court of Common Pleas of Allegheny

County from which these appeals were taken. One, here identified as 1245 C.D. 1972, is in the form of a statutory appeal, contesting the validity of Ordinance 598 of appellee Township. The other, here identified as 1246 C.D. 1972, is in the form of a complaint in equity to enjoin the enforcement of Ordinance 598. Other than the prayer for relief, the allegations of the two complaints are identical and, initially, appellees filed identical preliminary objections in both actions.[1] The court fixed December 8, 1971, as the date for a hearing on the statutory appeal, as well as the date for the hearing on the request for a preliminary injunction. On December 8, 1971, and thereafter, a record of testimony and exhibits were produced before the lower court which required 400 pages of record to be prepared, exclusive of the pleadings and the opinions.

The transcript of the testimony and exhibits were filed in the equity action. On July 7, 1972, the learned court below dismissed the complaint in equity. On July 20, 1972, extensive exceptions were filed by the appellants to the "Findings, Conclusions, Determinations and Decree Nisi, filed July 7, 1972." On August 11, 1972, the parties filed a formal stipulation that the "record, exhibits, and testimony" in the equity action be incorporated into the statutory appeal. On December 6, 1972, reciting that the parties had agreed and stipulated that the statutory appeal could be determined on the basis of the same testimony taken in the equity action, the court entered an order dismissing the statutory appeal.

Procedurally, these two cases were presented in a very informal manner with regard to whether there was one or two particular cases before the court at any one time; nevertheless, at all critical times in the record, as

---

[1] However, subsequently, on January 17, 1972, appellees filed additional preliminary objections in the equity action, alleging that appellants had an adequate remedy at law.

outlined above, appropriate actions were taken by counsel in each case to incorporate the other, except perhaps at the most critical point in the statutory appeal, here identified as 1245 C.D. 1972. We can find no exceptions filed to the court's order entered on December 6, 1972, dismissing the statutory appeal. No opinion was filed by the court below in the statutory appeal, nor was there any stipulation that the opinion in the equity action, including findings and conclusions, should be considered the opinion in the statutory appeal action. When the court en banc was constituted by having a judge specially assigned by the President Judge, it was constituted to hear arguments on the exceptions in the equity action. When the opinion of the court en banc was filed, it was filed only in the equity action.

Pursuant to a petition filed by appellants on January 2, 1973, alleging that the facts, circumstances, and issues were identical in both appeals, the President Judge of this Court entered an order consolidating the appeals, thereby requiring only one record and one set of briefs, each in the required number, to be prepared covering both cases.

In view of the fact that quite clearly no steps were taken in the court below to establish a right of appeal in the statutory appeal 1245 C.D. 1972, we would be justified in quashing that appeal *sua sponte*. However, since the parties, especially the appellants, and the court below treat the statutory appeal as rising or falling on the decision in the equity case, and since the result in this instance is the same, we will do likewise.

Stated as briefly as practical, in the fall election of 1971, what would appear to have been a heated campaign was conducted for the office of Township Commissioner. Much of the evidence and exhibits that constitute the record were presented by appellants in an effort to show that a corporal on the township police force improperly campaigned in support of one of the

successful candidates. The township police force then consisted of a chief of police, a sergeant, two corporals, and five policemen. The chief of police reported to the township manager. After the election, Ordinance 598, here in issue, was adopted. It created a new table of organization for the police force. The senior administrative officer was designated superintendent of police and was to be appointed by the Board of Commissioners subject to the approval of the Civil Service Commission; the superintendent reports to the Board of Commissioners and not to the township manager. The second in command was denominated captain of police, and the other members of the force were patrolmen. Ordinance 598 provided that the pay, benefits, and working conditions of all incumbent members of the police force should remain the same. Following the adoption of Ordinance 598,[2] the corporal, who is here accused of wrongful political activity, was named superintendent of police. His civil service status is now in separate litigation. The former chief of police was named captain.

The appellants' case really is based on the proposition that Ordinance 598 was enacted in bad faith and is, therefore, invalid. The trial judge, confirmed by the court en banc, found otherwise and there is more than sufficient evidence in the record to support his finding. In the *amicus curiae* brief, filed on behalf of the Western Pennsylvania Chiefs of Police Association, it is pointed out that under the law established in *Carey v. Altoona*, 339 Pa. 541, 16 A. 2d 1 (1940), and *Schearer v. Reading*, 346 Pa. 27, 28 A. 2d 790 (1942), even if there is no bad faith, if offices are abolished and new positions created with the same duties and

---

[2] The issue of whether the attempt to implement the Ordinance prior to proper advertisement was cured by proper advertising was properly and adequately disposed of by the court below. It was properly advertised prior to being put into effect.

this results in personnel changes, it violates civil service law and the Ordinance is invalid. Again, supported by competent evidence, the court below has found that that is not the case here; however, and most important, the record reveals that there are several proceedings previously instituted and now pending, challenging the civil service aspects of this case, and the dismissal of the complaint in equity is expressly without prejudice to these cases.

The other major positions of appellants, which were ruled adversely to them in the court below, relate to the status of appellants to bring this action in equity, first because their position is no different from that of any other taxpayers, and second because there is an adequate remedy at law. In view of our affirmation of the court below on the main issue, it is not necessary to discuss these two in detail. It seems appropriate to observe that it is very unusual that none of the individual members of the police force, nor either of the commissioners who voted against the Ordinance, joined in this action. As revealed in the testimony, those individual police officers who were dissatisfied have instituted various actions of their own. Some of these are now pending. These individuals have certainly adopted the appropriate procedure. *See Merrick v. Jennings*, 446 Pa. 489, 288 A. 2d 523 (1972), and *Clodi v. Kremens and Wohlgemuth*, 4 Pa. Commonwealth Ct. 350 (1972). Since these individuals have availed themselves of the other remedies, it seems futile for the appellants to argue that there are none. The other arguments of the appellants are without merit and were adequately dealt with by the court below.

Affirmed.

———

CONCURRING OPINION BY JUDGE KRAMER:

I concur in the result solely upon the majority's holding that in view of the obvious adequate remedies

at law, mentioned in the opinions of the court below, the court sitting in equity did not have jurisdiction. The record clearly discloses that the former chief of police, lieutenant, and sergeant, all have contested their alleged demotions under the civil service laws; and, hopefully, the outcome of those suits will finally determine whether the governing body of O'Hara Township committed an error of law or abused its discretion.

I am concerned, however, that the result of this case may be utilized by other municipalities in the Commonwealth as a means of support for a course of action, following a political election, to circumvent the civil service laws as they apply to municipal employees. From my point of view, we have not passed upon, in this case before us, the methods utilized by the governing body of O'Hara Township as being the proper method for being rid of police officials to the political disliking of a newly elected municipal governing body. I am concurring in the result on the basis stated above, with the firm belief that justice will be done in the other pending suits, and specifically, not on the basis that the change in titles of the police officers, and the realignment of the police department in O'Hara Township was proper, or legally supportable. That issue has yet to be determined.

I believe it equally important to note at this place that this writer has deep reservations on the legality of the O'Hara Township ordinance reorganizing its police department, as was done in this case, in view of the Act of June 24, 1968, P. L. 237, Act No. 111, 43 P.S. §217.1 et seq. To permit the governing body of a municipality to circumvent a binding collective bargaining agreement by such unilateral reorganization appears to defeat the purpose of Act No. 111. Once again, however, I must admit that the pleadings in this case do not support this action in equity by these plaintiffs to determine this possible additional issue. If the com-

plaint had specifically alleged injury to these plaintiffs (none of whom are police officers), it is conceivable that even citizen-taxpayers of such municipality could partake of protection provided by courts of equity. In view of the fact that the court below specifically found that there was no irreparable harm to these plaintiffs, such an equity action for these purposes cannot be justified.