## Blake et vir *v.* Marinelli, Appellant.

Argued May 27, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Douglass D. Storey,* with him *Frank B. Quinn, English, Quinn, Leemhuis & Plate* and *Storey & Bailey,* for appellant.

*A. Grant Walker,* with him *Henry A. MacDonald* and *Gifford, Graham, MacDonald & Illig,* for appellees.

PER CURIAM, June 30, 1947:

In this case the appealed from "order" granting a new trial is affirmed on the following excerpts from the opinion of the court below.

"On May 18, 1945, the wife plaintiff was seriously and permanently injured by being struck by defendant's truck on State Street in the City of Erie. State Street is an extremely busy two-way traffic artery and the accident happened between intersections.

"The testimony disclosed that the wife plaintiff left the premises of the Erie Dry Goods Company, known as the Boston Store, sometime after 2:00 p. m. and walked eastwardly to the west curb of State Street which is a north-south street. Immediately before the Boston Store is a well-defined 'No Parking' zone which is marked by white lines running out into the cartway and by vertical 'No Parking' signs which are stationed at the north and the south limits of the zone at the curb line. The wife plaintiff walked eastwardly to the north 'No Parking' sign and prepared to cross State Street between the intersections of Seventh and Eighth Streets, Seventh Street being an east-west street to the north of her, and Eighth Street being an east-west street to the south.

"As she prepared to cross the street, defendant's truck passed her, going in a southwardly direction on the west side of State Street. The wife plaintiff followed the progress of the truck out of the corner of her eye and

then, seeing no indication that the truck was about to stop or change its motion, stepped into the cartway, concentrating her attention to the north from which the natural flow of traffic would be expected. She had proceeded only four or five steps when she was struck by defendant's truck which was then backing up. As a result of being struck, the wife plaintiff suffered a fracture in her left hip just below the head of the femur. She is now suffering from lost motion in the left leg and is unable to bear her whole weight on it. The leg itself has been shortened about one inch as a result of her injuries.

"The jury returned a verdict in which . . . was molded into a finding for the defendant . . .

"Upon the trial of the case, Arthur Scholton, a witness for the plaintiff, testified upon cross examination that he had seen the defendant's truck pull up between the 'No Parking' signs in front of the Boston Store and then back up at the rate of about one mile an hour. He further testified that while the truck was in the process of backing up he saw a woman (whom he did not identify as the wife plaintiff but the inference was plain that it was she) step off the curb. The testimony disclosed that the 'No Parking' space was only twenty-one feet wide, and the effect of the testimony of this witness was to cement the inference raised by the testimony of the wife plaintiff that she must have heedlessly stepped off the curb without looking, and walked into the path of the backing truck.

"After the trial the witness Scholton signed an affidavit in which he admitted having perjured himself. The plaintiffs promptly, and within term time, called this matter to the attention of the court and incorporated this witness's perjury as a reason for a new trial. We then ordered a hearing and argument and, on the date set, took the testimony of Scholton. At the hearing he admitted having perjured himself, stating that he had not seen the truck before the accident but had seen it only

after the wife plaintiff had been struck. He further admitted that he had not seen a woman step down off the curb while the truck was backing up. He could assign no satisfactory reason for having so stated.

"The hearing on plaintiffs' motion also developed some other enlightening information concerning Scholton's testimony. It developed that shortly after the accident he had signed a statement for the plaintiffs in which he stated that he had not seen the accident but had rushed to the scene only after the wife plaintiff had been struck. . . .

"It therefore appears that the testimony of this witness was not credible. No jury should be allowed to measure his credibility without knowing all of the facts surrounding his numerous contradictions and conflicting statements. Our own appraisal of him is that he can not be believed under any circumstances. The entire fact-finding mechanism of our judicial system is founded upon the sanctity of the oath as a circumstantial guarantee of the trustworthiness of a witness's testimony.

"The fact, as contended by defendant, that the plaintiffs, in calling Scholton, were presumed to attest to his veracity does not alter our present situation. They called him upon the false premise that he would testify according to the statement given them shortly after the accident. Not knowing that he would perjure himself, they are not now barred from basing their grounds for a new trial upon his false testimony. . . .

"There was ample evidence from the lips of the wife plaintiff alone which would have justified the jury in concluding that she was guilty of contributory negligence, but we have no means of knowing whether the verdict was founded upon her testimony since they might well have drawn their conclusions from Scholton's perjured evidence.

"A careful reading of *Candelore v. Glauser*, 291 Pa. 582, *Lipkin v. American Ice Co.*, 90 Pa. Superior Ct. 303, and *Crouse v. Volas*, 117 Pa. Superior Ct. 532, leads

us to the conclusion that we have no alternative but to grant a new trial. Our sole reason for doing so is the testimony given by Scholton at the hearing on plaintiff's motion for a new trial.

"We shall, of course, call this matter to the attention of the District Attorney for appropriate action . . ."

Judgment affirmed.