## Manning, Appellant, v. Millbourne Borough.

Argued April 19, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Howard Richard,* with him *Berman, Richard & Brian,* for appellant.

*Stephen J. McEwen, Jr.,* with him *McEwen and McEwen,* for appellee.

OPINION BY MR. JUSTICE EAGEN, October 10, 1960:

This is an appeal from the judgment in an action of mandamus instituted in the court below by appellant, Jacob Manning, in which he seeks reinstatement to the office of chief of police of the Borough of Millbourne with pay for the period beginning February 1, 1954. Essential to a clear understanding of the issues presently confronting us is a brief expedition into the historical settings of *Manning v. Millbourne Borough Civil Service Commission,* 387 Pa. 176, 127 A. 2d 599 (1956).

Jacob Manning was appointed chief of police on January 3, 1951. He continued in that office until February 1, 1954, on which date the position was abolished by ordinance. Thereafter and until December 6, 1954, appellant served as a patrolman on the force. At that time he was dismissed for neglect of duty and conduct unbecoming an officer. From this dismissal he appealed to the civil service commission of the borough but was refused a hearing because his appointment as patrolman was not in conformance with civil service requirements. He then instituted an action of

mandamus in the Court of Common Pleas of Delaware County wherein he sought an order from that court to the commission directing a hearing. This order was granted and the commission appealed to this Court for reversal. We held in *Manning v. Millbourne Borough Civil Service Commission,* supra, that patrolman Manning was not entitled to a hearing before the commission because he had never enjoyed civil service status *as a patrolman.* That decision was handed down on November 27, 1956. When, on January 1, 1957 (just one month short of three years after the elimination of the office of chief of police) the borough council officially created the office of "captain of police" and appointed Nicholas Mamallis to the post, appellant Manning became confirmed in his suspicions that the office of chief had been abolished in bad faith and that he had been illegally removed therefrom. Accordingly, this action was instituted and the lower court ruled that he was not validly appointed chief of police and that he had not proved his allegations of bad faith on the part of council in eliminating the office which he had held. Hence, this appeal.

Presented here and determined below was the issue of whether or not appellant had civil service status as chief of police. This question was not decided in the first Manning appeal, nor was it there raised. In that case, this Court said, p. 182: "A careful reading of the record leaves grave doubt as to whether the plaintiff was ever legally appointed as chief of police in accordance with §1178. But be that as it may, the issue here is whether Manning was validly employed *as a patrolman.*"[1] In the instant case, the lower court relied on the following quotation from our opinion in the earlier appeal: "Strict compliance with the civil service laws

---

[1] Emphasis, ours.

is necessary; substantial compliance is not enough: (citing cases)." This reliance was directed to the lower court's determination of whether Manning was ever properly certified by the commission as chief.[2] The court below held that he was not so certified and based this conclusion on testimony of one Charles Adler, who was chairman of the civil service commission when Manning was appointed. Adler, on cross-examination, was asked, "How did you certify him?" and answered, "By word." The lower court then held this not to have constituted strict compliance with the civil service laws. Said the court: "This (certification by word) would rebut the presumption relied upon by this court in the earlier case that under the well-established principle of law there is a strong presumption that a public body is properly performing its functions and has taken all necessary steps to give validity to its official acts. It must be assumed, therefore, that the borough officials did not receive proper certification of Jacob J. Manning to the position of police chief and therefore he is not now entitled to civil service status . . . ." Aside from the curious inference necessarily to be drawn from the above language that an assumption can rebut a presumption, we need on this issue only state that the conclusion we have reached on the issue of whether the office was legally abolished makes a determination by us of the issue of proper certification unnecessary.

We said in the earlier *Manning* case, supra, p. 178: "It is well settled that the borough council had the right, acting in good faith, to discontinue the office of chief of police: (citing cases)." Counsel for appellant rely on *Schearer v. Reading,* 346 Pa. 27, 28 A.

---

[2] Act of May 4, 1927, P. L. 519, art. XI, §1178, added July 10, 1947, P. L. 1621, §39, as amended July 19, 1951, P. L. 1026, No. 217, §1, 53 PS §46178.

2d 790 (1942), wherein we said, p. 30: ". . . his (plaintiff's) removal under the guise of abolishing his office was, in the face of the simultaneous creation of a new office having the same function but a different appellation, a mere pretense and admittedly invalid: (citing cases)." In that case this Court quoted from the lower court's opinion as follows: " 'But we find that by the very ordinance which purported to abolish the position of chief of police, the position of police commissioner was created at the identical salary and with precisely the same duties.' " Appointment to the newly created office in the *Schearer* case was made on the very day that the old office was abolished. In the instant case, the office of captain of police was, as we previously observed, not created until thirty-five months after the elimination of the office of chief of police. In the meantime, the personnel of council had changed, three new members having seats at the time of the official creation of the office of captain of police.

In the earlier *Manning* appeal, this Court perhaps significantly stated: "Plaintiff does not contend that in abolishing the office of chief of police the council of the borough was activated by any improper motive. . . . Plaintiff has no further claim to that office or the emoluments thereof, nor does he so contend." Now, in as much as appellant here did not raise that issue in the earlier appeal, we feel that the above-quoted language should not be held to be determinative of the issue on this appeal. But, what happened? Six weeks after that decision was filed, the office of "captain of police" was officially created and appellant at that time became convinced that the then three-year-old abolition of the office of chief was illegal because it was effected in bad faith. But the proof in the record is inadequate to sustain this allegation. If coun-

cil on the same day created by ordinance a new office at the same salary and having the same duties, this in itself would certainly raise a strong presumption of bad faith on the part of the council in abolishing the old job. But where, as here, the new office is created three years later by a council made up, in part, of new personnel, such a presumption of bad faith cannot logically be held to arise. There must be proof of facts or circumstances to justify a conclusion of its existence. The "proof" here offered was not of this caliber. This case is similar to *Mamallis v. Millbourne Borough,* 401 Pa. 375, 164 A. 2d 209, wherein the showing of bad faith did not rise above the level of hint and suggestion.

The salary of chief immediately before elimination of the office was $3960 annually, that of patrolman $3500 a year. In 1954, when the office of chief was eliminated, the salary of patrolman was increased by $250 a year. With four patrolmen on the force, these raises amounted to $1000 yearly. By eliminating the office of chief and reducing Manning to patrolman, a reduction in his annual salary of only $210 was effected. "The resultant effect of the salary increases and the elimination of the office of chief of police was a net increase in cost to the Borough of Millbourne of $790 annually in the operation of the police force." (p. 17, brief for appellant). In 1954, the salaries of secretary, treasurer and health officer were raised a total of $210. This is all that was shown. There is no positive proof at all of bad faith, but merely a showing of a $790 increase in the operation of the force and a $210 total increase in the salaries of the three above-named officers. Because Millbourne thus expended $1000 more in 1954 than it did in 1953 (the year the office of chief was abolished), appellant contends that in eliminating the office of chief of police,

allegedly for reasons of harmony and economy, the council *must* have been activated by improper motive, must have acted in bad faith. To this unsupported conclusion the appellee responds as follows: "This reasoning fails to comprehend the difference between the terms 'economize' and 'save'. The council eliminated the cost of what it considered an unnecessary expenditure. The fact that this sum that was eliminated was spent on what council considered necessary does not mean that council was guilty of 'bad faith' in eliminating the unnecessary expenditure." (p. 16, brief for appellee). Surely, in the absence of a satisfactory showing of bad faith on the part of council, appellee's argument must prevail. Bad faith is not sufficiently shown by the submission of a list of figures which are as consistent with good faith as not. The mere fact that $1000 more was spent by the borough the year after the elimination of one of its offices than in the year immediately preceding the abolition of that office is not, by and of itself, an unequivocal indication of the council's bad faith, if any there were. In any event, this Court is not disposed to allow weak inferences, not logically deducible from the facts on which they are based, to substitute for the clear showing, the strong proof that it has always required of him who alleges bad faith and improper motive.

Judgment affirmed.