## Commonwealth v. Mosteller, Appellant.

Argued December 8, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Mark S. Refowich,* for appellant.

*Nicholas M. Zanakos,* Assistant District Attorney, with him *Charles H. Spaziani,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 19, 1970:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:
This case is a review of Judge PALMER'S denial of a motion for new trial, a motion based on the recantation of the prosecutrix. Judge PALMER is a careful and thorough judge. He is attentive to the evidence presented and diligent with respect to the relevant law.

The case in which I differ with him is one to which he gave his closest attention. I think, however, that a different result is warranted.

Appellant was convicted of incest, statutory rape, and corrupting the morals of his fifteen-year-old daughter. The only incriminating evidence offered by the Commonwealth was that of the daughter. She testified that her father had committed certain acts, which, if true, warranted appellant's conviction. A doctor also testified in behalf of the Commonwealth, but his testimony was essentially negative. His examination of the girl a day after the alleged attack produced no evidence that such an attack had occurred. Appellant took the stand and denied his daughter's testimony. Upon this evidence, the jury returned a verdict of guilty.

Two weeks after the trial, the daughter appeared in the district attorney's office and deposed that she had testified falsely at trial. Her deposition, if true, completely vindicated appellant. A hearing was subsequently held at which the daughter's great-aunt testified. She stated that, prior to trial, the girl had admitted her father had done no wrong. Judge PALMER disbelieved the statements contained in the deposition. He further concluded that the great-aunt's testimony was not after-discovered evidence. Accordingly, he denied a motion for a new trial.

I have no hesitation in calling the daughter's deposition after-discovered evidence. (1) It could not have been produced at trial, since it was made afterward. (2) It does not go to the credibility of the daughter alone but rather goes to the substantive case. (3) It is not just cumulative and corroborative of evidence already at hand. (4) It is likely that had the girl testified at trial as she had in the deposition, a different result would have been reached. See, e.g., *Commonwealth v. Krick*, 164 Pa. Superior Ct. 516, 519, 67 A. 2d 746, 748 (1949).

The question this case presents, however, is the extent of the trial judge's discretion to reject such evidence. Judge PALMER is quite correct that recanting testimony is "exceedingly unreliable". See, e.g., *Commonwealth ex rel. Estelle v. Cavell*, 191 Pa. Superior Ct. 200, 156 A. 2d 615 (1959); *Commonwealth v. Palarino*, 168 Pa. Superior Ct. 152, 77 A. 2d 665 (1951); *Commonwealth v. Ruff*, 92 Pa. Superior Ct. 530 (1928). In most instances, this testimony is offered by accomplices who no longer have any interest in telling the truth. Quite often they are induced to change their stories to get their partners "off the hook". Just as their testimony is viewed with caution when initially received, so it is proper that it should be given no more credence when denied. See, e.g., *Commonwealth v. Didio*, 212 Pa. Superior Ct. 51, 239 A. 2d 883 (1968). In most instances, therefore, the granting of wide discretion to the trial judge to reject such recantation is justified.

This case, however, where the very victim comes forward to change her testimony, warrants a departure from what may be a wholely justified attitude in the majority of cases.

Here we have a young girl who is the sole witness against her father. Upon her testimony his fate rests. She goes under oath twice. The stories she tells are in direct conflict. She is, moreover, corroborated to a certain extent in her recantation. When a situation like this appears, we cannot stand by our normal attitudes.

In civil cases, when a party or a key witness admits, without contradiction, that his prior testimony was false, a new trial is granted. See, e.g., *Blake v. Marinelli*, 357 Pa. 314, 53 A. 2d 550 (1947): Cf. *Kvaternik v. Yochim*, 360 Pa. 387, 61 A. 2d 815 (1948). This is because it is important for the trier of fact to have before him all the facts with respect to the wit-

ness' statements, both his consistencies and his contradictions.

When life and liberty are at stake, as they are in criminal cases, such a rule should be applicable in appropriate cases. Where the recantation is not that of a self-confessed criminal but of the victim herself, I would adopt the civil rule. Indeed, once before, this Court has followed such a pattern. In a case remarkably similar to the instant case, this Court concluded: "[The girl's] letter and affidavit do not merely impeach her credibility but completely destroy and obliterate the testimony of the one witness upon whose testimony the defendant was convicted. The jury's verdict cannot be sustained without her testimony. In effect the young girl says that she committed perjury, and it was upon her perjured testimony that the defendant was convicted. Under such circumstances a new trial should be awarded. . . . *In the absence of sworn evidence impeaching the girl's retraction,* a new trial should have been granted." *Commonwealth v. Krick,* supra at 520, 67 A. 2d at 749 [Emphasis added.]

There was no testimony offered by the Commonwealth which impeached the daughter's testimony. Her recantation stood without contradiction. The great-aunt's testimony tended to corroborate her. The doctor's trial testimony added further credence. As the record stands, I think it is essential that the jury should be given the opportunity of viewing and evaluating all of the evidence.

I would vacate judgment of sentence and grant a new trial.