Luis CLAUDIO and Sexta Claudia, IDV. and as H/W, Appellees,

v.

DEAN MACHINE COMPANY, INC., Burton Industries, American Steel Line, Inc., North American Brass, Inc., and Hannum Electric Company, Appellants.

Superior Court of Pennsylvania.

Argued April 24, 2001.

Filed Aug. 1, 2001.

Reargument Denied Sept. 27, 2001.

Joseph V. Pinto, Philadelphia, for appellants.

John B. Day, Philadelphia, for appellees.

Before JOHNSON, STEVENS, and LALLY–GREEN, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, Dean Machine, Inc. (DMI), appeals from the judgment entered

September 19, 2000. We vacate the judgment and remand for a new trial.

¶ 2 The unusual procedural history of the case is as follows.[1] On December 22, 1997, Appellees Luis Claudio and Sexta Claudio filed an action against Dean Machine Company (DMC), as well as other defendants who are no longer parties to the action. Appellees alleged that on January 24, 1996, Luis Claudio was operating a coil slitter machine in the course of his employment when the machine malfunctioned, causing severe injuries to his hand, including amputation of four fingers. Appellees alleged that DMC manufactured, designed, marketed, and sold the machine. Appellees brought causes of action against DMC for negligence, breach of warranty, strict products liability, and loss of consortium.

¶ 3 On February 19, 1998, DMI filed an answer and new matter, alleging that DMI had been "incorrectly designated as Dean Machine Company" in the Complaint. DMI stated that it "never manufactured, designed, marketed, or sold the machine which is the subject of plaintiff's complaint; nor did it ever maintain, repair, or have any connection whatsoever with this machine."[2] Throughout the litigation, the law firm of Viletto Bosniak and Ross filed pleadings on behalf of both DMI and DMC.

¶ 4 DMI filed a motion for summary judgment on October 4, 1999.[3] This motion was denied on October 22, 1999. The

motion for summary judgment and the order denying the motion were not made part of the certified record on appeal.

¶ 5 Shortly before trial, DMI filed a motion *in limine* to preclude Appellees from presenting any evidence against DMI, on the ground that Appellees had signed a stipulation to dismiss DMI from the case. The motion *in limine* and the stipulation were not made part of the certified record on appeal. The trial court denied this motion on the first day of trial. N.T., 2/18/2000, at 2.

¶ 6 On February 16, 2000, two days prior to trial, Appellees filed a motion to amend the caption to substitute DMI for DMC. While this motion was not made part of the certified record on appeal, it was referenced in the February 18, 2000 trial transcript as follows:

THE COURT: There is a motion to amend the complaint to add as a defendant Dean Machine, Inc., which was filed when? Today, sir?

APPELLEES' COUNSEL: I believe Wednesday, Your Honor.

THE COURT: Wednesday. That's denied as well.

APPELLEES' COUNSEL: But the motion, Your Honor, was to change the caption, the name of the defendant.

THE COURT: Right. That's denied.

N.T., 2/18/2000, at 2.

¶ 7 The case proceeded to trial against DMC on the issue of damages only. N.T.,

---

1. The docket entries are not numbered.

2. Specifically, DMI alleged the following. On August 22, 1988, DMC changed its name to GHD, Inc. On the same day, David Maynard and Paul Caito entered into an equipment lease agreement with GHD. Over one year later, on December 18, 1989, David Maynard and Paul Caito incorporated into DMI. DMI never purchased assets from DMC or GHD, and never agreed to assume any assets or liabilities of DMC. Moreover, "the subject ma-

chine was manufactured and sold by [DMC] to plaintiff's employer at least 10 years prior to the equipment lease agreement between David Maynard and Paul Caito and GHD, Inc., formerly Dean Machine Company." *See,* New Matter at ¶¶ 42–48.

3. We note that nothing in the record suggests that DMI was a party at this stage of the proceedings.

2/22/00, at 12.[4] Mark Bosniak, Esq., of Viletto Bosniak and Ross, represented DMC at trial. During the trial, on February 22, 2000, Appellees "moved into evidence" Paragraphs 42–45 of DMI's Answer and New Matter, as well as exhibits attached thereto. *Id.* at 2–3. Even though this material was originally submitted by **DMI** to establish that it had no liability for the incident, the court allowed the plaintiffs, **Appellees** herein, to move this material into evidence to build a record in support of Appellees' previously-denied motion to change the caption. *Id.* at 5. At DMC's counsel's request, the trial court then admitted the entire Answer and New Matter into evidence. *Id.* at 4.

¶ 8 On February 2, 2000, the jury entered a verdict for $2,500,000.00 in favor of Appellee Luis Claudio, and a verdict for $150,000.00 in favor of Appellee Sexta Claudio. Both verdicts were rendered against DMC.

¶ 9 On February 24, 2000, Appellees filed two motions: (1) a post-trial motion to amend the caption and mold the verdict to enter a judgment against DMI; and (2) a motion for delay damages. We will set forth the procedural history of each motion separately.

**Motion to amend the caption and mold the verdict against DMI**

¶ 10 This motion was not made part of the certified record on appeal. The trial court set forth the procedural history of this motion as follows:

> Written memoranda were submitted by the parties and, on June 8, 2000, this Court held oral argument. The issue of successor liability was debated and the court granted a continuance of the hearing to allow counsel to present evidence on this issue. Counsel traveled to Rhode Island and deposed Albert Saun-

ders, Jr., Esquire, former counsel to DMC, and also David Maynard, one of the principals of DMI. Oral testimony was again presented to this Court on July 11, 2000.

Trial Court Opinion, 7/19/2000, at 3. None of the evidentiary material referred to in the above passage was made part of the certified record on appeal. On July 19, 2000, the trial court granted Appellees' motion, substituted DMI "as a proper defendant," and molded the verdict to impose liability on DMI.

**Motion for delay damages**

¶ 11 On February 24, 2000, Appellees filed a motion for delay damages. DMI filed an Answer and New Matter, alleging that the verdict and all delay damages should be reduced as a result of a settlement and release agreement between Appellees and Hannum Electric Company, Inc. (Hannum). On July 19, 2000, the court denied this motion and added delay damages in the amount of $266,899.48.

¶ 12 On July 31, 2000, DMI filed motions for post-trial relief seeking judgment notwithstanding the verdict (JNOV), a new trial, or remittitur. DMI again argued the issue of the release. The trial court denied these motions on August 29, 2000. On September 19, 2000, the trial court imposed judgment against DMI in the total amount of $2,916,899.48. This appeal followed.

¶ 13 DMI raises six issues on appeal:

1. Whether the trial court erred by denying DMI's Motion for Summary Judgment when plaintiffs came forth with no evidence to show DMI could not be liable for a product it had not manufactured, sold, or had anything to do with?

---

4. Pursuant to a pretrial stipulation, liability was not at issue. N.T., 2/22/00, at 12.

2. Whether the trial court erred by denying the Motion in Limine to exclude any evidence against DMI?

3. Whether the trial court properly received and evaluated new testimonial evidence after the jury verdict on post-trial motions?

4. Whether the trial court properly reversed post-trial its pre-trial ruling denying plaintiffs leave to amend and holding post-trial that DMI was the successor to Dean Machine Company when DMI never manufactured, sold or had anything to do with a "coil slitter"?

5. Whether DMI should be granted judgment in its favor and against plaintiffs notwithstanding the verdict entered by the court below on new testimony submitted after trial, or in the alternative, whether DMI should be granted a new trial.

6. Whether the trial court erred by denying DMI's post-trial motion to give effect to the Griffin Release entered by plaintiffs?

DMI's Brief at 5. For clarity, we have rearranged the order of the questions presented to correspond to the chronological order of the underlying proceedings.

¶ 14 First, DMI argues that the trial court erred when it denied DMI's motion for summary judgment. DMI's Brief at 33–35. As a preliminary matter, we must determine whether the certified record is sufficient to analyze this issue.

■ ¶ 15 "It is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Hrinkevich v. Hrinkevich,* 450 Pa.Super. 405, 676 A.2d 237, 240 (1996) (citation omitted). "Under our Rules of Appellate Procedure, those documents which are not part of the 'official record' forwarded to this Court are considered to be non-existent.... And, these deficiencies may not be remedied by inclusion in a brief in the form of a reproduced record." *D'Ardenne v. Strawbridge & Clothier, Inc.,* 712 A.2d 318, 326 (Pa.Super.1998) (citation omitted), *appeal denied,* 557 Pa. 647, 734 A.2d 394 (1998). "It is well settled that an appellate court may consider only those facts which have been duly certified in the record on appeal." *Albert v. Albert,* 707 A.2d 234, 236 (Pa.Super.1998).

■ ¶ 16 In the instant case, DMI's motion for summary judgment and the trial court's order disposing of this motion were not made part of the certified record. As such, we have no basis on which to determine whether the trial court erred. Because the certified record is insufficient for this Court to analyze the issue, it is waived on appeal.

■ ¶ 17 Second, DMI argues that the trial court erred by denying its motion *in limine* to exclude any evidence against DMI. DMI's Brief at 35–36. According to the trial court, this motion was based on a stipulation signed by all parties except Hannum, which had settled with Appellees before trial. N.T., 2/18/2000, at 2.[5] As noted above, neither this motion *in limine* nor the stipulation was made part of the

---

5. DMI's brief on appeal makes no reference to the stipulation which was the basis of the motion *in limine.* Rather, DMI appears to argue a different point: "Given the court's ruling on the first day of trial that DMI was not a proper party, no evidence was relevant to DMI and none should have been admitted." DMI's Brief at 35–36. To the extent that this argument on appeal is different from the argument raised before the trial court, it is waived. *See,* Pa.R.A.P. 302(a) ("issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

certified record. As such, we have no basis for analyzing the trial court's decision. Because the certified record is insufficient for this Court to analyze the issue, it is waived on appeal.

■ ¶ 18 Third, DMI argues that the trial court erred by holding a post-trial evidentiary hearing to determine whether DMI was the successor corporation to DMC. Pennsylvania Rule of Civil Procedure 227.1 provides, in relevant part, as follows:

 (a) After trial and upon the written Motion for Post–Trial Relief filed by any party, the court may

 (1) order a new trial as to all or any of the issues; or

 (2) direct the entry of judgment in favor of any party; or

 (3) remove a nonsuit; or

 (4) affirm, modify, or change the decision or decree nisi; or

 (5) enter any other appropriate order.

 (b) Post–Trial relief may not be granted unless the grounds therefor,

 (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial[.]

Pa.R.Civ.P. 227.1(a), (b)(1), 42 Pa.C.S.A. (emphasis added).

¶ 19 In the instant case, the record reveals that Appellees raised a pretrial motion to amend the caption to substitute DMI for DMC as the proper defendant. The trial court denied this motion. After trial, Appellees raised this issue again by way of a post-trial motion. Rather than reverse its previous ruling outright, the trial court took the intermediate step of holding an evidentiary hearing to determine whether DMI should be substituted as the proper defendant under principles of successor liability. The trial court explained its decision as follows:

 Because plaintiffs properly made a pre-trial motion for a change in defendant, plaintiffs reserved the right to bring up successor liability as a matter of post-trial relief. When plaintiffs raised the issue of successor liability at post-trial argument, they gave the court an opportunity to review and reconsider its determination during pre-trial proceedings that the complaint could not be amended to name DMI, as successor to DMC, as the proper defendant.... [Rule 227.1] allows post-trial relief where the same relief was denied during pre-trial proceedings. It does not forbid admission of new evidence to prove that the relief in question should be granted.

Trial Court Opinion, 11/21/00, at 2.

■ ¶ 20 Like the trial court, we have discovered no authority prohibiting a court from conducting a post-trial evidentiary hearing to dispose of issues that have been raised before or during trial. The purpose of post-trial motions is to allow the trial court an opportunity to correct its errors. *Soderberg v. Weisel,* 455 Pa.Super. 158, 687 A.2d 839, 845 (1997). Occasionally, as in the instant case, a trial court may believe that it acted hastily or improperly by denying a party the opportunity to develop an important legal issue through an evidentiary hearing. Given the broad scope of Rule 227.1(a), we decline to announce a general rule prohibiting trial courts from taking appropriate steps to correct this class of error.

¶ 21 DMI's arguments to the contrary are unavailing. First, DMI argues that the court erred by allowing Appellees to develop evidence regarding successor liability after trial, when such evidence was available before trial. For example, DMI argues that the trial court improperly per-

mitted Appellees to take the depositions of Albert Saunders, Jr., Esquire (DMC's former counsel) and David Maynard (a principal of DMI) when these individuals "were available since the case first started in December 1997." DMI's Brief at 27. We disagree. The pertinent facts relating to successor liability were fixed long before trial commenced. Thus, the timing of the evidentiary hearing was largely immaterial. *See, Schindler v. Sofamor, Inc.,* 774 A.2d 765, 2001 PA Super 118 at ¶ 27 ("we will not disturb a proper legal decision simply because it could have been entered earlier").[6]

¶ 22 In a similar vein, DMI argues that the court erred because the "grounds" for Appellees' argument changed after trial. Specifically, DMI argues that the facts supporting Appellees' pretrial motion to amend the caption differed from the facts supporting Appellees' post-trial motion to mold the verdict. *See,* DMI's Brief at 26. We are unable to analyze this claim because neither pleading was made part of the certified record on appeal. Moreover, the trial court held that the issue of successor liability was appropriately raised and preserved before trial. In such a situation, where the court was given an opportunity to recognize and correct its error, we are generally reluctant to hold that the issue was waived for failure to

comply with Rule 227.1(b). *Soderberg,* 687 A.2d at 845. In the instant case, the trial court recognized that it should have given Appellees the opportunity to develop the issue of whether DMI was the successor to DMC. Under the circumstances of this case, we see no abuse of discretion in the court's decision.

 ¶ 23 In its fourth issue on appeal, DMI contends that the trial court's determination of successor liability was substantively incorrect. As noted above, "[i]t is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Hrinkevich,* 676 A.2d at 240. "It is well settled that an appellate court may consider only those facts which have been duly certified in the record on appeal." *Albert,* 707 A.2d at 236. The record on appeal consists of "the original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court." Pa.R.A.P. 1921. DMI acknowledges that none of the evidence from the post-trial hearing was made part of the certified record on appeal.[7] Accordingly, this Court is unable to

---

6. We recognize that Appellees could have been more diligent in developing a pretrial factual record tending to establish that DMI was the successor corporation to DMC. Such vigorous action on Appellees' part could have prompted the trial court to order a pretrial evidentiary hearing to more fully develop the issue. On the other hand, Appellees' failure to present a strong pretrial *prima facie* case for successor liability does not preclude the trial court from exercising its discretion to hold a later evidentiary hearing on the subject.

7. Ironically, DMI relies on the lack of material in the certified record to argue that the trial court erred by considering evidence which

was not made part of the record. DMI suggests that in order for the evidence to have been part of the certified record, it should have introduced at or before trial. DMI's Brief at 28–29. We disagree. "It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in this case." *Smith v. Smith,* 431 Pa.Super. 588, 637 A.2d 622, 623 (1993) (emphasis added), *appeal denied,* 539 Pa. 680, 652 A.2d 1325 (1994). DMI has cited to no authority similarly limiting the trial court to matters contained in the certified record. Moreover, if evidence from the post-trial hearing had not been included in the certified record, DMI could have and

determine whether the trial court erred, if at all. This claim is waived.

¶ 24 In its fifth argument on appeal, DMI argues that it is entitled to a new trial because the court erroneously molded the verdict against DMI when it had no opportunity to present a defense at trial. DMI's Brief at 27–28. We agree. Our reasoning stems from analogous, established principles relating to the amendment of pleadings. "In order to secure a determination of cases on their merits the trial court should grant, whenever possible, a petition to change the name on a pleading. However, if the other party suffers prejudice or surprise, the petition to change the name of a party will not be permitted." *Zercher v. Coca–Cola USA,* 438 Pa.Super. 142, 651 A.2d 1133, 1134 (1994).

¶ 25 As noted above, we see no abuse of discretion in the court's decision to hold an evidentiary hearing to determine whether DMI was the successor corporation to DMC. This hearing served the goals of correcting pretrial errors and allowing liberal amendment to the pleadings in order to ensure that the case proceeds against the proper party. Thus, the problem lies not in the hearing itself, but rather in the court's action of molding the verdict after holding the hearing. It is this action which prejudiced DMI by imposing a substantial judgment on an entity which was not a party to the action and, therefore, had no opportunity to defend itself at trial. Once the trial court recognized that DMI should have been a party to the litigation as a successor to DMC, the proper course of action in the interest of justice would have been to grant a new trial. Accord-

ingly, we vacate the judgment and remand for a new trial.

¶ 26 Finally, DMI argues that the trial court erred by refusing to mold the verdict according to the terms of a *Griffin* release.[8] Given that we have vacated the judgment and granted DMI a new trial, this issue is moot. Nevertheless, given the possibility that this issue will arise again on remand, we will discuss the issue to provide guidance to the trial court.

¶ 27 Determining the legal effect of a written release is a question of law. *Baker v. ACandS,* 562 Pa. 290, 755 A.2d 664, 667 n. 4 (2000). Our scope of review is plenary; our standard of review is to determine whether the trial court abused its discretion or committed an error of law. *Id.*

¶ 28 Before discussing the legal effect of a *Griffin* release, we will set forth pertinent background information relating to releases generally. When a plaintiff files suit against multiple defendants, the plaintiff may settle the case with respect to certain defendants but not others. The settlement agreement between a plaintiff and a settling defendant may contain a release which benefits the nonsettling defendant by reducing the ultimate recovery awarded to the plaintiff at trial by an amount or percentage specified in the release. *See, id.* at 666 n. 1.

¶ 29 Generally, there are two types of such releases: a *pro tanto* release and a *pro rata* release. *Id.* With a *pro tanto* release, the plaintiff's recovery against the nonsettling defendant is reduced by the dollar amount already paid to

should have taken steps to do so in order to preserve this issue on appeal. *Hrinkevich,* 676 A.2d at 240. As noted above, the certified record on appeal includes papers and exhibits "filed in the lower court," regardless of whether those materials were filed before or after the trial itself.

8. *See, Griffin v. United States,* 500 F.2d 1059 (3rd Cir.1974).

the plaintiff for the release by the settling defendant. *Id.* The second type of release is the *pro rata* release. In this scenario, the settling defendant has settled its case with the plaintiff, but the factfinder proceeds to determine the relative percentage of liability attributable to both defendants. *Id.* The nonsettling defendant's liability is reduced not by a specific dollar amount, but rather by the percentage of liability that is allocated by the factfinder to the settling defendant. *Id.*

¶ 30 Under either a *pro tanto* or a *pro rata* scenario, "the nonsettling defendant is not entitled to a set-off in light of the settling defendant's release unless the settling and non-settling defendants are both deemed to be joint tortfeasors." *Id.* at 671, *citing,* 42 Pa.C.S.A. § 8326; *see also, Rocco v. Johns–Manville Corp.,* 754 F.2d 110, 115 (3rd Cir.1985) ("if the released party is not a joint tortfeasor, he is considered a volunteer. In that circumstance, the amount paid for the release is not deducted from the recovery against a nonreleased party"). Where two parties are joint tortfeasors, the plaintiff has the right to recover the entire verdict from either party, *Baker,* 755 A.2d at 669. If the party paying the verdict has paid "more than its proportionate share of the verdict," it may sue the nonpaying defendants for contribution. *Id.* (citations omitted).

¶ 31 Thus, "a defendant has the right to require a codefendant settling on a *pro rata* release to remain in the case through trial and verdict to establish joint tortfeasor status." *Carr v. American Red Cross,* 17 F.3d 671, 673 (3rd Cir.Pa.1994), *citing, Davis v. Miller,* 385 Pa. 348, 123 A.2d 422, 423 (1956); *see also, National Liberty Life Ins. Co. v. Kling Partnership,* 350 Pa.Super. 524, 504 A.2d 1273, 1277 (1986) (same). "Pennsylvania has apparently adopted this position to avoid allowing a defendant who may be the sole tortfeasor to obtain the benefit of the release." *Griffin,* 500 F.2d at 1071–1072.

¶ 32 In order to avoid the expense of retaining the settling defendant(s) in the lawsuit, the parties may execute a *Griffin* release. To illustrate the effect of a *Griffin* release, we will discuss the facts and procedural history of *Griffin* itself. In that case, the plaintiffs filed an action against the United States for damages arising out of the ingestion of a polio vaccine. *Id.* at 1062. The plaintiffs filed a separate action against Pfizer, the drug's manufacturer. *Id.* The plaintiffs settled their action against Pfizer for $350,000.00. *Id.* The release stated, in pertinent part, as follows:

> In order to avoid inconvenience and expense to [Pfizer] in any action in which [Pfizer] is or may be made a defendant or third party defendant together with other alleged tortfeasors, it is further agreed by us that any verdict rendered against the other alleged tortfeasors shall be reduced by the pro-rata share of [Pfizer], and any judgment on said verdict shall be in the amount of the verdict reduced by the pro-rata share of [Pfizer], whether or not [Pfizer] was in fact a joint tortfeasor. This provision is intended to obviate the necessity and expense of having [Pfizer] remain a party on the record and obliged to participate at its expense in a trial merely for the purpose of determining if in fact it was a tortfeasor so as to entitle the other tortfeasors to a pro rata reduction of any verdict.

*Id.* at 1072.

¶ 33 The case against the United States proceeded to trial, where the plaintiffs were awarded $2,059,946.25. *Id.* at 1063. The United States sought to have the verdict reduced by 50% pursuant to the plaintiffs' release with Pfizer. *Id.* at 1071. The

district court held that the release was ineffective to reduce the verdict because the United States did not join Pfizer as a third-party defendant to determine Pfizer's status as a joint tortfeasor. *Id.*

¶ 34 The Third Circuit Court of Appeals reversed, stating that the release was unambiguous and that the plaintiffs conceded Pfizer's joint tortfeasor status. *Id.* at 1072. Thus, "[h]aving waived their right to insist on a judicial determination of Pfizer's joint tortfeasor status, [the plaintiffs] may not object to a reduction of their judgment against the United States to the extent of Pfizer's pro rata share." *Id.* Moreover, even if the United States had attempted to join Pfizer as a defendant, Pfizer could have "obtained a dismissal" pursuant to the terms of the release. *Id.* at 1072–1073. The Court reversed and remanded for further proceedings. *Id.* at 1073.

¶ 35 Thus, with a *Griffin* release, the plaintiff agrees that the nonsettling defendant has a right of setoff without an express determination by the court that the settling defendant is, in fact, a joint tortfeasor. *Rocco,* 754 F.2d at 115; *see also, In re: Diet Drugs Prods. Liab. Litig.,* 2000 U.S.Dist. LEXIS 12275 at *195 (E.D.Pa.2000) (with a *Griffin* release, the plaintiff agrees "that the lack of a judicial determination that the settling defendant is a joint tortfeasor does not preclude nonsettling defendants from obtaining set-off or judgment reduction rights they would otherwise have under applicable law in the absence of the Settlement Agreement"); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 176 F.R.D. 158, 181 (E.D.Pa.1997). Indeed, with a *Griffin* release, the plaintiff effectively concedes that the defendants are joint tortfeasors. *Griffin,* 500 F.2d at 1072. Accordingly, "the need to keep the settling codefendant in the case no longer exists." *Carr,* 17 F.3d at 683. In short,

the effect of a *Griffin* release is to grant the nonsettling defendant a *pro rata* reduction in the judgment without requiring that defendant to establish that the settling defendant is liable to the plaintiff. In the event that the issue of the *Griffin* release arises on remand, we respectfully request that the trial court consider these principles when rendering its decision.

¶ 36 For the reasons set forth above, we vacate the judgment against DMI and remand for a new trial.

¶ 37 Judgment vacated. Case remanded for a new trial. Jurisdiction relinquished.

¶ 38 JOHNSON, Judge, files a Dissenting Opinion.

JOHNSON, J., Dissenting:

¶ 1 I respectfully dissent. In my opinion, the trial court acted beyond the permissible scope of its discretion in convening an evidentiary hearing after entry of the verdict without an offer of proof based on legally cognizable after-discovered evidence. When the court recorded the verdict, the record was closed and should have remained so unless the plaintiffs could demonstrate that evidence they sought to admit post trial could not have been discovered prior to trial through the exercise of due diligence. The Majority's disposition effectively dispenses with this procedural safeguard, allowing trial courts virtually unfettered discretion under Rules of Civil Procedure 227.1 and 1033 to admit new evidence after delivery of the verdict. Because I conclude that the trial court's action in convening an evidentiary hearing under the guise of these rules is inconsistent with law, I would vacate the judgment as molded by the trial court and enter judgment on the verdict as delivered by the jury.

¶ 2 In this appeal, Dean Machine, Inc. (DMI), states six questions involved. In

support of its first and second questions, respectively (as renumbered by the Majority), DMI argues that the court erred in denying its motion for summary judgment, and in denying its motion in limine to exclude evidence at trial against DMI. The Majority has determined that DMI failed to provide a record sufficient to enable our review and so has waived these assertions. I agree with the Majority in its disposition of these two questions.

¶ 3 I disagree, however, with the Majority's disposition of DMI's third, fourth, and fifth questions. DMI argues, in support of its third question, that the trial court erred in receiving new testimonial evidence after entry of the jury's verdict in order to amend the caption, and in its fourth question, that evidence was legally insufficient to support the court's determination that DMI is the successor in interest to DMC. Because I conclude, in response to DMI's third question, that the trial court exceeded the permissible scope of its discretion in admitting evidence post trial, I would find no occasion to consider the sufficiency of that evidence and so would not reach DMI's fourth question. In its fifth question, DMI asserts that the trial court erred in molding the verdict to impose liability on DMI and should instead have granted DMI judgment notwithstanding the verdict, or in the alternative, a new trial. The Majority determines, and I agree, that "the court erroneously molded the verdict against DMI when [DMI] had no opportunity to present a defense at trial." Majority Opinion at 231. Unlike the Majority, however, I cannot conclude that the trial court's error is rectified by the grant of new trial. In my opinion, a retrial of this case merely compounds the underlying error, allowing the plaintiffs an unwarranted chance to lodge a verdict against another defendant on the basis of evidence that is not properly before the court.

¶ 4 In reaching its decision to grant a new trial, the Majority reasons:

We see no abuse of discretion in the court's decision to hold an evidentiary hearing to determine whether DMI was the successor corporation to DMC. This hearing served the goals of correcting pretrial errors and allowing liberal amendment to the pleadings in order to ensure that the case proceeds against the proper party. Thus, the problem lies not in the hearing itself. . . .

Majority Opinion at 232. The Majority appears to buttress this conclusion with an exceptionally broad interpretation of Pa. R.C.P. 227.1, and an absence of authority to the contrary. *See id.* at 230–231 ("Like the trial court, we have discovered no authority prohibiting a court from conducting a post-trial evidentiary hearing to dispose of issues that have been raised before or during trial. . . . [A] trial court may believe that it acted hastily or improperly by denying a party the opportunity to develop an important legal issue through an evidentiary hearing. Given the broad scope of Rule 227.1(a), we decline to announce a general rule prohibiting trial courts from taking appropriate steps to correct this class of error.").

¶ 5 In my opinion, the Majority construes Rule 227.1 much too broadly, applying the rule to a "class of error" that, on the facts of this case, is beyond its proper purview. Rule 227.1 provides, in pertinent part:

Rule 227.1. Post–Trial Relief

(a) After trial and upon the written Motion for Post–Trial Relief filed by any party, the court may

(1) order a new trial as to all or any of the issues; or

(2) direct the entry of judgment in favor of any party; or

(3) remove a nonsuit; or

(4) affirm, modify or change the decision or decree nisi, or

(5) enter any other appropriate order.

(b) Post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial [.]

Pa.R.C.P. 227.1.

¶ 6 We have recognized in the past, and the Majority recognizes here, that "[t]he purpose of [Rule 227.1] is to provide the trial court with an opportunity to review and reconsider its earlier rulings and correct *its own* error." *Soderberg v. Weisel,* 455 Pa.Super. 158, 687 A.2d 839, 845 (1997) (emphasis added). In this case, the trial court's reasoning in support of its decision to grant the plaintiffs' port-trial motion does not suggest judicial error. *See* Trial Court Opinion, 11/21/00, at 2 ("If the court had the benefit of the depositions of Albert Saunders and David Maynard before trial, it may have allowed the amendment at that time."). Indeed, the court's discussion establishes not that it misconstrued the evidence adduced in support of the plaintiffs' request to amend the caption, *but that the plaintiffs failed to provide evidence sufficient to support a decision in their favor.* In view of the trial court's discussion, I can conclude only that the "class of error" at issue in this case is that of the plaintiffs in failing to provide the Saunders and Maynard depositions in a timely fashion to support their request for relief. Error of a party is simply not cognizable as a basis for relief under Rule 227.1, and the trial court is not empowered to use the Rule for that purpose.

¶ 7 I conclude that the Majority errs as well in creating from Rule 227.1 a remedy in the form of the post-trial evidentiary hearing that the rule, of itself, does not provide. In support of its determination, the Majority appears to rely heavily on the rule's subsection (a), which allows a trial court, on post-trial motion, to enter enumerated forms of relief as well as "*any other appropriate order.*" Pa.R.C.P. 227.1(a)(5). *See also* Majority Opinion at 8 (quoting rule with added emphasis on subsection (a)(5)). The Majority does not, however, consider the "appropriateness" of the admission of new evidence after entry of the verdict in light of controlling law on this issue.

¶ 8 As a general matter, a trial court has broad discretion to allow a party's introduction of new evidence *before the case is submitted to the jury* but after that party has rested. *See Beaumont v. ETL Services, Inc.,* 761 A.2d 166, 168 (Pa.Super.2000). While the court may reopen the record for admission of new evidence *after a case is submitted to the jury,* its discretion to do so is substantially curtailed, subject to principles of law governing the grant of a new trial on the basis of after-discovered evidence. *See Hydro–Flex, Inc. v. Alter Bolt Co., Inc.,* 223 Pa.Super. 228, 296 A.2d 874, 877 (1972); *Koch v. Ziegler,* 130 Pa.Super. 158, 196 A. 562, 563 (1938); *Township of Perkiomen v. Mest,* 92 Pa.Cmwlth. 307, 499 A.2d 706, 709 (1985) *rev'd on other grounds,* 513 Pa. 598, 522 A.2d 516, 519 (1987).

¶ 9 A request to reopen a case for admission of new evidence or to grant a new trial on the basis of such evidence "should be granted only where that evidence[:] 1) is new; 2) could not have been obtained at trial in the exercise of due diligence; 3) is relevant and non-cumulative; 4) is not for the purpose of impeachment; 5) and must be likely to compel a different result." *Hydro–Flex,* 296 A.2d at 877. In this matter, the plaintiffs have failed to establish, or even to argue, that the evidence they

sought to introduce could not have been obtained at trial or prior to trial through the exercise of due diligence. Additionally, the record does not reflect that they ever offered such a showing of proof to the trial court. Although the plaintiffs argue that the evidence, in the form of the post-trial depositions of Saunders and Maynard, was necessary to expose false answers given by DMC in its answers to interrogatories, they fail to demonstrate why they could not have deposed those two witnesses prior to trial. Indeed, the interrogatories in response to which the plaintiffs claim DMC provided false responses, were served and answered months before trial. Had the plaintiffs wished to make further inquiry about the particular answers provided, they had more than ample notice upon which to do so. Because the plaintiffs failed to demonstrate the necessity of the evidence they sought to introduce in accordance with the law of after-discovered evidence, I am compelled to conclude that the trial court erred in reopening the record and allowing the introduction of that evidence at a post-trial evidentiary hearing. *See Hydro–Flex*, 296 A.2d at 877. I am convinced also that because the law of after-discovered evidence constrains award of a new trial, the Majority errs in providing one. In the absence of a demonstration by the plaintiffs that they could not have obtained the evidence in question at trial or prior thereto, they should not be accorded a new forum in which to correct a mistake that was theirs alone.

¶ 10 Thus, in accordance with the request of DMI, I would vacate the judgment of the trial court and reinstate the verdict of the jury subject to application of the *pro rata* release executed by the plaintiffs.