**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| STEPHEN M. FRIEND | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHANIE J. FRIEND | : | |
| | : | |
| Appellant | : | No. 701 WDA 2024 |

Appeal from the Order Entered May 6, 2024
In the Court of Common Pleas of Somerset County
Civil Division at 174 Civil 2019

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: January 29, 2025**

Stephanie J. Friend (Mother) appeals *pro se* from the order denying her requests to (1) modify physical custody of the parties' two older children, and (2) take all of the children out of the country for a family wedding.  We affirm.

*Case History*

Mother and Stephen M. Friend (Father) are the parents of six children, ages 8 to 18.[1]  The parties share legal and physical custody of the four younger children pursuant to a September 8, 2020 court order.  An order entered September 14, 2022 pertains to two older children, I.J.F. and E.M.F.  As noted, I.J.F. is no longer a minor.  E.M.F., who was born in March 2008, is 16 years old and still subject to custody proceedings.  The trial court described Mother's

_____

[1] The oldest child, I.J.F., is no longer subject to these proceedings because she turned 18 in October 2024.  **See** 23 Pa.C.S. § 5322; **see also M.B.S. v. W.E.**, 232 A.3d 922, 928 (Pa. Super. 2020) (after a child's 18th birthday, "neither this Court nor the trial court will have subject matter jurisdiction").

relationship with I.J.F. and E.M.F. as "the essence of this case." Trial Court Opinion (TCO1), 5/6/24, at 4.

The September 14, 2022 order provided the parties with shared legal custody of the two older children, and awarded primary physical custody to Father. The court conditioned Mother's partial physical custody as follows:

> [M]other shall promptly engage the services of a psychotherapist and promptly begin psychotherapy counseling with an eye toward improving her relationship with the children and promoting [M]other's reunification with the children.
>
> Mother's psychotherapist shall consult with [the children's therapist,] Jeffrey Tasker[,] so that the psychotherapist and Mr. Tasker can consult and discuss the relationship of [M]other and the children[,] and suggest to one another techniques and therapies designed to promote reunification … and achieve a harmonious relationship between [M]other and the children.
>
> At a point when the psychotherapist and Mr. Tasker both agree that joint counseling would be appropriate between [M]other and the children, then [M]other and the children shall engage in joint counseling sessions. …
>
> It is a prerequisite of this order that before [M]other may begin exercising her partial physical custody rights, as hereinafter defined, that she have already begun counseling with a psychotherapist.
>
> Additionally, [M]other shall promptly notify the Somerset County Child Custody Office of the name, address, and telephone number of her psychotherapist; and [M]other shall sign the necessary consents and releases to permit the psychotherapist to speak with representatives of the Somerset County Child Custody Office and to permit disclosure of information regarding [M]other's treatment and counseling directly to the Somerset County Child Custody Office.

Order, 9/14/22, at 9-10.

The court awarded physical custody to Mother in three phases. Pertinently:

During the months of October, November, and December, 2022, on the weekend that occurs during "Week Number 2" when Mother does not have physical custody of the parties' four youngest children, Mother shall have a three-hour period of partial physical custody with the [two older] children on either Saturday or Sunday. During which time, Mother shall be permitted to pick the children up from Father's home and take them to a public place to spend quality time with them such as a restaurant, the movies, a park, the mall, etc.; and then, Mother shall return the children to Father's home at the conclusion of the three-hour period.

*Id.* at 11.

In Father's words, "the circumstances did not improve and a major incident occurred on November 26, 2022[,] that resulted in [Father] filing a Petition for Emergency Relief on November 28, 2022." Father's Brief at 9. Mother recounted "parking my car and my vehicle was still moving and they jumped out of the car." N.T., 4/15/24, at 51. The trial court described the incident as the two older children "removing themselves from Mother's vehicle and running, eventually to a [] restaurant, and the police were called to intervene." TCO1 at 4. After a hearing, the court ordered:

Mother's periods of partial physical custody under the September 14, 2022 order are suspended pending further order of this court.

Mother may enjoy periods of supervised visitation with the children, whose initials are I.J.F., age 16[,] and E.M.F., age 14[,] at such times and places as Mother and Father may mutually agree.

Order, 12/23/22.

Approximately a year later, the parties entered into a consent order which provided for Mother's supervised visitation with the two older children "on alternating weeks for one (1) hour each per week at an agency of Mother's choosing." Order, 1/18/24, at 2. Mother subsequently petitioned for shared physical custody of the two older children, and requested permission to take all six children to Columbia for a family wedding.

The trial court held two days of hearing on April 15-16, 2024. The court interviewed the five older children outside the presence of the parties and counsel. TCO1 at 5-6. The court also heard testimony from Mother, Father, Mr. Tasker, Father's wife, and "a representative of Somerset County Children & Youth Services and the Children." *Id.* at 2. Mother described the two older children as "hostile to" her. N.T., 4/15/24, at 64. Mr. Tasker testified to being the two older children's therapist since 2019. N.T., 4/16/24, at 228. He stated he "would like to see reunification," but opined that it would "not [be] healthy for [the children], absolutely not at this time." *Id.* at 255.

The trial court issued an opinion and order from the bench. The court described Mother's relationship with the two older children as, "to say the least, volatile." TCO1 at 4. The court acknowledged Mother's testimony that "she did in fact engage a counselor (who did send confirmation to Mr. Tasker)[,] but cost and insurance issues prevented her from following through as [] ordered." *Id.* at 4-5. Nonetheless, the court observed that Mother had failed to comply with "the very essence" of the September 14, 2022 order directing her "to receive professional help for her mental health." *Id.* at 5.

- 4 -

The court concluded that Mother "must recognize, admit, and begin to remedy her own mental health before she can advance any relationship with her older daughters." *Id.* at 7. The court verbally entered the order which states:

> The court, even after a two-day hearing, cannot improve on [the] order dated September 14, 2022, therefore, Mother shall continue to have the partial custody schedule with the four youngest children as outlined by [the September 8, 2020 order] on an equal basis with Father.
>
> Mother's opportunity to see her two older children will be completely dictated by, one, the children's age; and, two, Mother's compliance with [the September 14, 2022] order.
>
> Mother cannot have any contact, supervised or unsupervised, with the two oldest children except as approved by Mr. Tasker and Mother's chosen counselor.
>
> Until Mother complies with her counseling, the court does not grant permission for any of the children to leave the country for a family wedding.

Order, 5/6/24.[2]

On June 3, 2024, Mother filed a motion seeking the trial court's recusal, followed by a notice of appeal and concise statement of errors pursuant to Pa.R.A.P. 1925. On July 17, 2024, the trial court issued a second opinion stating:

> With the aforesaid appeal, [Mother] filed a Motion to Recuse the undersigned. The [c]ourt had never met any of the parties or any of their witnesses. [Mother] filed the Motion to Recuse only after receiving a decision with which she did not agree. This [c]ourt denies the Motion to Recuse. This [c]ourt has no conflict with

---

[2] Although the transcript of the opinion is dated April 24, 2024 and the transcript of the order is dated April 30, 2024, they were filed together on May 6, 2024.

administering over this matter. Further, there is no appearance of a conflict.

Regarding []Mother's Concise Statement of Matters Complained of, this [c]ourt finds no merit in any of the claims alleged. For any other outstanding issues raised by Mother, this [c]ourt will rely on the record.

Trial Court Opinion (TCO2), 7/17/24, at 1-2.

Mother challenges the trial court's discretion in each of the following issues:

1. Did the trial court err as a matter of law or abuse its discretion in wholly disregarding the 3 custody court orders that superseded the September 14, 2022 [order] to determine a ruling[?]

2. Did the trial court err as a matter of law or abuse its discretion in intentionally claiming [Mother] did not follow through with Counseling of the September 14, 2022 court order without reviewing all the documented evidence to make a decision?

3. Did the trial court err[] and abuse[] its discretion in failing to consider all of the 4 [younger] children's testimony at trial[, and] then sealed the children's testimony and put the children's testimony in a locker by a window according to the court docket?

4. Did the trial court err as a matter of law or abuse its discretion in neglecting the rule of law that requires a party to file a criminal abuse affidavit, five days before trial[,] and allow[ Father] to continue even though [Father], [Father's] spouse and [Father's] spouse the son [*sic*] failed to file a criminal abuse affidavit required five days before trial by law pursuant to 231 Pa. Code §1915.3-2 - Criminal Record or Abuse History[?]

5. Did the trial court err as a matter of law or abuse its discretion by overlook[ing] that [Father] was court ordered January 17, 2024 to ATTEND A THE FOCUS SEMINAR WITHIN THE NEXT SIXTY (60) [*sic*] [days] and was not listed on [the] record [and/]or [did not] sen[d] document proof to [Mother]?

6. Did the trial court err as a matter of law or abuse its discretion [and] effectively put[ Mother] out of court because the trial court overlooked parental alienation that caused the two eldest children to be brainwashed?

7. Did the trial court err as a matter of law or abuse its discretion [in] that the court's final order was unreasonable because it failed to address the fact that the 4 younger children will now be deprived the right to see extended family in Columbia for a wedding and also because the children would know more about their heritage of being Latino and gave no details as to why the decision was denied[?]

8. Did the trial court err as a matter of law or abuse its discretion in finding that it was in the best interests of the two oldest children to not have any visitation with [M]other where the evidence demonstrated that [M]other doesn't present a grave threat to the children that will age out and the question presented is such that if … review is postponed until final judgement [*sic*] in the case, the claim will be irreparably lost?

9. Did the trial court err[] and abuse[] its discretion in giving no weight to document evidence and therefore fail to consider the well-reasoned Petition to modify custody and the Pretrial narrative filed by [Mother] in failing to award any custody rights to [Mother] of the 2 oldest children, in light of the factors set forth in 23 Pa.C.S. § 5328 that precluded [Mother] from presenting the merits[?]

10. Did the trial court err[] and abuse[] its discretion in creating the appearance of prejudice and bias against [Mother that] will cause mental damage to the younger children in the opinion?

11. Did the trial court err[] and abuse[] its discretion in creating the appearance of prejudice and bias against [Mother] as having mental issues in the opinion?

12. The trial court's findings of fact and legal analysis of the custody factors are not supported by the competent evidence of record and used hearsay to solely[] determine custody, and [is] therefore manifestly unreasonable?

13. Did the trial court err[] and abuse[] its discretion [by] not ruling on the January 17, 2024 court order about [Mother's fiancé,] as [he] does not reside at [Mother's] residence or possess [a] threat to harm the children?

Mother's Brief at xiii-x. Mother claims her "issues presented revolve around the merits of the case and whether a party who asserts one's right to seek a

- 7 -

just outcome shouldn't be penalised [*sic*] for being a *pro se* [L]atino mother for wanting [*sic*] to spend time with her children." ***Id.*** at 18.

*Discussion*

Notably, Mother filed two appellate briefs. Mother filed the first brief on August 28, 2024. In response, Father successfully filed an application to strike the first brief for being defective and failing to conform with the Rules of Appellate Procedure. ***See*** Application to Strike, 9/4/24, at 2-6. When this Court granted Father's request, we noted that the brief "appear[ed] incomplete as it contains only eleven pages and various attachments while the table of contents suggests that the brief alone constitutes more than 100 pages." Order, 9/13/24. We provided Mother with ten days to file a "complete brief." ***Id.***

Mother filed the second brief — her brief of record — on September 20, 2024. Father filed a "renewed" application to strike on September 24, 2024. Father observed that Mother's "second brief does not conform with the requirements of the Pennsylvania Rules of Appellate Procedure." Renewed Application to Strike, 9/24/24, at 2. Father detailed the deficiencies as follows:

> 11. Again, the Argument section in [Mother's] brief attempts to insert testimony and exhibits that are not in the original record or the certified record from the trial court.
>
> 12. Specifically, there is no citation in [Mother's] brief to the trial court transcript or the exhibits properly admitted and made a part of the trial court record.

13. [Mother] clearly has in her possession a copy of the lower court's trial transcript, including the exhibits admitted during the trial; however, [Mother] does not cite the transcript once in her brief.

14. Rule 1921 of the Pennsylvania Rules of Appellate Procedure states:

> The original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of the proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases.

Pa.R.A.P. 1921 [].

15. The Note in Rule 1921 states, "[a]n appellate court may consider only the facts which have been duly certified on the record on appeal." *Id.*

16. Again, throughout the Argument section of [Mother's] brief, [Mother] does not provide any citations to the original record, namely trial court transcript and exhibits admitted at trial. *See* Pa.R.A.P. 2119(c) []; *see also* Pa.R.A.P. 2132 [].

17. Instead, [Mother] attempts to insert testimony that was not presented at trial and attach/reference exhibits that were not admitted at trial, including, but not limited to Appendix K of [Mother's] brief and the pictures/exhibits included in [Mother's] brief on pages 33-35, 43, 44, 48, 56-60, 70-78, 80-101, 113, and 114. *See* [Mother's] Second Complete Brief 33-35, 43, 44, 48, 56-60, 70-78, 80-101, 113, and 114.

18. Further, the exhibits attached and/or referenced in [Mother's] brief were not admitted into evidence during the trial before the lower court nor made a part of the lower court's record.

19. Accordingly, the exhibits attached as a part of [Mother's] brief are not part of the original record nor a part of the certified record before this Honorable Court.

20. It should be noted that [Mother] only had one (1) exhibit admitted into evidence at trial, which was a text message. *See* R. 1.3; 2.215.

21. [Father] contends that [Mother's] brief, nearly in its entirety, is devoid of information that is in the official or certified record from the trial held before the lower court.

22. [Mother's] brief does not include any citation or reference to the lower court transcript, including her own testimony and the sole exhibit that she introduced and was admitted into evidence.

23. Here, this Honorable Court may only consider facts and documents that have been certified in the record. *See Albert v. Albert*, 707 A.2d 234, 234 (Pa. Super. 1998) ("It is well settled that an appellate court may consider only those facts that have been duly certified in the record on appeal." (citing *Murphy v. Murphy*, 599 A.2d 647, 642 ([Pa. Super.] 1991)); *see also Claudio v. Dean Machine Company, Inc.*, 786 A.2d 224, 229 (Pa. Super. 2001) ("Under our Rules of Appellate Procedure, those documents which are not part of the 'official record' forwarded to this Court are considered to be non-existent. … And, these deficiencies may not be remedied by inclusion in a brief[.]" (citations omitted)).

*Id.* at 3-6.

Father claimed "the defects in [Mother's] brief are so substantial that it would be a waste of judicial resources for this Honorable Court to proceed with [Mother's] appeal." *Id.* at 7. Thus, he argued this appeal should be quashed or dismissed; in the alternative, he asked that the facts and documents in Mother's brief that are not part of the record be suppressed. *Id.* at 8. By *per curiam* order, this Court declined Father's requests without prejudice to Father "to again raise this issue, if properly preserved, in his appellate brief." Order, 9/27/24.

Father has again raised the issue, reiterating that Mother's brief contains substantial defects. Father's Brief at 4-6, 14-15, 19. He states that Mother's brief, "nearly in its entirety, is devoid of information that is in the official or

- 10 -

certified record." *Id.* at 15. Father "further contends that nearly all the facts and documents in the Argument section of [Mother's] Brief should be considered 'non-existent.'" *Id.* at 15-16 (footnote omitted). We agree that the deficiencies in Mother's brief are substantial.

Mother filed the body of her brief, in excess of 100 pages, in two parts. The body of the brief is interspersed with copies of various documents. For example, in Part 2 of Mother's brief, she inserts a copy of what appears to be an email, not of record, that she sent to Father's attorney about "Spring break vacation 2024." Mother's Brief at 70. Separately, Mother has filed copies of various documents as appendices A-Q. As Father stresses, much of the content is not part of the original record. This Court "cannot consider anything which is not part of the record[, and a]ny document which is not part of the official certified record is considered to be nonexistent, which deficiency may not be remedied by inclusion in the reproduced record." *Brandon v. Ryder Truck Rental, Inc.*, 34 A.3d 104, 106 n.1 (Pa. Super. 2011) (citations omitted). "Where a review of an appellant's claim may not be made because of such a defect in the record, we may find the issue waived." *Id.*

Mother also fails to present a coherent legal argument. "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review[,] a [c]ourt will not consider the merits thereof." *Branch Banking and Trust v. Gesiorski*, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation omitted). This Court has found waiver in an appeal of a custody order where the argument "appear[ed] to be a

general complaint that the trial court reached the wrong conclusions on the issues." ***R.L.P. v. R.F.M.***, 110 A.3d 201, 208 (Pa. Super. 2015). We explained:

> Mother fails to develop any legal arguments in her [] issue and has waived any claims she might have raised there. "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) (internal citations omitted). ***See also Chapman–Rolle v. Rolle***, 893 A.2d 770, 774 (Pa. Super. 2006) ("It is well settled that a failure to argue and to cite any authority supporting an argument constitutes a waiver of issues on appeal.").

***Id.*** at 208–09.

For the above reasons, we are unable to conduct meaningful appellate review. Therefore, Mother's issues are waived.[3]

In the absence of waiver, we would not be inclined to disturb the trial court's order. We review custody orders for an abuse of discretion. ***See Taylor v. Smith***, 302 A.3d 203, 206 (Pa. Super. 2023). "Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as

---

[3] We recognize Mother is *pro se*. While this Court is "willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant." ***Commonwealth v. Lyons***, 833 A.2d 245, 251–52 (Pa. Super. 2003). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument[.]" ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018). A person who represents herself in legal proceedings, "must, to a reasonable extent, assume that h[er] lack of expertise and legal training will be h[er] undoing." ***Id.***

the trial court viewed and assessed witnesses firsthand." *Id.* at 207 (citing

***S.C.B. v. J.S.B.***, 218 A.3d 905, 913 (Pa. Super. 2019)). "It is not this Court's

function to determine whether the trial court reached the 'right' decision;

rather, we must consider whether, 'based on the evidence presented, given

[*sic*] due deference to the trial court's weight and credibility determinations,'

the trial court erred or abused its discretion[.]" ***King v. King***, 889 A.2d 630,

632 (Pa. Super. 2005) (quoting ***Hanson v. Hanson***, 878 A.2d 127, 129 (Pa.

Super. 2005)). As Father points out, all of Mother's issues "attempt to

relitigate the custody hearing while inserting testimony and evidence … that

is not in the official or certified record." Father's Brief at 19.

The Child Custody Act sets forth 16 factors a trial court must consider

when "ordering any form of custody." 23 Pa.C.S. § 5328(a). The court must

determine the best interest of the child by considering all relevant factors. *Id.*

Here, the trial court mentioned the 16 factors at the beginning of the first day

of hearing. N.T., 4/15/24, at 8 (trial court adding that it "often will make

anecdotal notes as people testify to something that I think is important"). The

court addressed each custody factor prior to issuing its decision. *See* TCO1

at 7-11. The court noted it had interviewed the two older children "outside

the presence of the parties and counsel," and relayed that the children

"expressed their exhaustion with the numerous court hearings, which they

blame on [] Mother." *Id.* at 5-6. The court also referenced the report of the

children's therapist, Mr. Tasker, which the court admitted into evidence over

Mother's objection. *Id.* at 6. The court noted "Mr. Tasker was a therapist

originally agreed upon by both parties," and had been seeing the children "regularly for several years." *Id.* The court "found Mr. Tasker credible and acting solely in [the children's] best interests." *Id.* at 6-7. Accordingly, the court explained:

> The Tasker report details Mother's historic poor relationship with her oldest daughters.
>
> Mr. Tasker summarizes by recommending no further contact between [the children] and [M]other because it is not in the best interests of his clients.
>
> He further states that once Mother re-engages with her own counseling, consistent with [the September 14, 2022] order, then this situation can be reviewed.
>
> Simply put, Mother must recognize, admit, and begin to remedy her own mental health before she can advance any relationship with her older daughters.

*Id.* at 7.

We would not be inclined to grant relief, even in the absence of waiver. Therefore, we affirm the trial court's denial of Mother's requests to modify custody of the two oldest children and take all of the children out of the country for a family wedding.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/29/2025

- 14 -